67   132
78   396

No. 2028.

L. B. CARUTHERS *v*. THE STATE OF TEXAS, EX REL.

1. JURISDICTION—REMOVAL OF COUNTY OFFICER.—The district court has jurisdiction to determine whether a county treasurer has been guilty of such official misconduct as would authorize his removal, in a suit brought by the State having that object in view, and if guilty it has the power to remove him.

2. SAME—EVIDENCE.—In such a suit, the defendant may show that the acts which are charged to have constituted "official misconduct" were legal acts; or, if not legal, that they were done under circumstances which negatived the idea of willful wrong.

3. STATUTE CONSTRUED—COUNTY SEATS.—The Act of April 10, 1879, regulating the removal of county seats, repealed all laws in conflict with its provisions, and neither it nor any previous law contained any provision by which it was declared what vote should be necessary to establish a county seat in a county which had been organized, but in which no county seat had been located. The Act of March 28, 1881, which added to the Revised Statutes Article 694a, prescribed the rule by declaring that a vote of two-thirds of all the electors voting in a newly organized county should be necessary to locate a county seat at a point more than five miles from the geographical center of the county.

4. SAME.—The Act of April 12, 1883, relating to the establishment of county seats went no further than the Act of April 10, 1879, in providing a rule to determine what vote should be necessary to locate a county seat in a county already organized; it has no repealing clause, and did not, by necessary implication, repeal the Act of March 28, 1881.

5. SAME—STATUTE CONSTRUED.—Since the Act of April 12, 1883, does not, in terms, declare what proportion of votes cast shall be necessary to locate a county seat in an organized county, in which no county seat has been fixed, the Act of March 28, 1881, has application to such a county, and must control. The county seat to be estalished in an organized county, in which none has been estalished, is to be deemed to be "the county seat first established."

6. SAME.—A two-third vote of all the votes cast at an election to remove a county seat is required in all cases except where the county seat is to be removed from a place not within five miles of the geographical center of the county to a place within that distance of such centre.

**7.** ELECTION—COUNTY SEAT.—The election held in Presidio county on the fourteenth of July, 1885, was held for the purpose of removing a county seat, and not for the purpose of establishing one in an organized county in which none had been established. It required a two-third vote of the vote cast to effect such removal to Marfa, and since a two-third vote was not obtained in favor of the removal, the county treasurer of Presidio county was not guilty of official misconduct in refusing to remove his office to Marfa, or in refusing to register bonds issued to build a court house and jail there.

APPEAL from Presidio.     Tried below before the Hon. T. A. Falvey.

*Hancock, Shelley & Hancock*, for appellant, cited Article 9, section 2, Constitution; Article 694, Revised Statutes; Acts Sixteenth Legislature, page 84, sections 1–5; Acts Seventeenth Legislature, page 67, Article 694a; Acts Eighteenth Legislature, page 82, section 7; 4 Wait's Actions and Defenses, citing Gilleland v. Sellers's Administrator, 2 Ohio State, 223; Morse v. Presby, 5 Foster, 299; Eaton v. Badger, 33 New Hampshire, 228; King v. Poole, 36 Barbour, 242; Blair v. Cummings, 39 California, 667, and Williamson v. Berry, 8 Howard, United States, 492.

*A. J. Peeler* and *Maxey & Fisher*, for appellee, on their proposition that neither the district nor the Supreme Court has jurisdiction to review or reverse the action of the county judge in declaring the result of an election in the removal of a county seat, cited Harrell et al. v. Lynch et al., 5 Texas Law Review, 680, 682; Gibson v. Templeton, 62 Texas, 555; Ex parte Whitlow, 59 Texas, 273; Williamson v. Lane, 52 Texas, 343, and Ex parte Towles, 48 Texas, 414.

On their proposition that it was the duty of the appellant to acquiesce in the action of the duly constituted authorities in removing the county seat from Fort Davis to Marfa, even though Marfa was the county seat de facto, rather than de jure, and his willful refusal to do so, to the prejudice of the public interest, was official misconduct, for which he was properly removed, they cited Kingsland, Ferguson & Co. v. Harrel, White & Willson's Condensed Civil Cases, section 726, and authorities there cited; Brennan v. Bradshaw, 53 Texas, 336, 337; Thulmeyer v. Jones, 37 Texas, 571; Aulanier v. The Governor, 1 Texas, 653; Ex parte Call, 2 Court of Appeals, 500, 501; State v. Carroll, 38 Connecticut, 449; 9 American Reports, 409; In Re Boyle, 9 Wisconsin, 264;

State v. Bloom, 17 Wisconsin, 538; Laver v. McGlachlin, 28 Wisconsin, 364; McNitt v. Turner, 16 Wall., 366; Cornett v. Williams, 20 Wall., 249, 250; In Re Ah Lee, 5 Federal Reporter, 899, et seq.; same case, 6 Sawyer, 410.

STAYTON, ASSOCIATE JUSTICE.    This is a proceeding by the State of Texas, upon the relation of M. F. Brown, to remove the appellant from the office of county treasurer of Presidio county.

It appears that from some time in the year 1875, until the twenty-fifth of July, 1885, the town of Fort Davis was recognized as the county seat of Presidio county, and while no record evidence seems to exist showing that an election for county seat was had in the year 1875, there is evidence tending to show that such an election was then held, and that Fort Davis was thus selected as the county seat.    The courts were held, and the county offices were kept at that place during that time.

On May 15, 1885, a petition was presented to the county judge of the county, signed by the requisite number of freeholders, requesting that an election be ordered to ascertain the wishes of the voters of the county as to the removal of the county seat from the town of Fort Davis to the town of Marfa.

The election was ordered, and held on the fourteenth of July, 1885, and on the twenty-fifth day of the same month the county judge canvassed the returns of the election and entered of record the result, which showed that there had been three hundred and ninty-one votes cast in favor of the removal of the county seat to "Marfa," and three hundred and two cast in favor of the county seat remaining at "Fort Davis."

The entry then proceeded as follows:   "And it appearing that no election had ever been held in Presidio county for the location of a county seat in pursuance of law, it is therefore declared that the county seat of Presidio county is by the vote of the people established and located at the town of Marfa, in the said county of Presidio."

After this entry was made the county offices other than that of the county treasurer were removed to Marfa; the courts were held there, and the business of the county generally there transacted.   The county treasurer, believing the removal illegal, refused to remove his office to that place, and continued it at Fort Davis. Four of the county commissioners protested against the removal.

Application was made to the district judge to remove two of the protesting commissioners, and after citations on those appli-

cations were ordered the district judge suspended those two commissioners from office, and James Ellison and G. W. Brown were appointed to act as commissioners during the suspension of the two whose removal was sought. It does not appear whether they were ever removed.

Application was also made to the district judge for the removal of the county judge, and an order was made suspending his functions, and T. T. Harnett was appointed to act as county judge during the suspension of the judge elect. One of the commissioners died and another was appointed in his place.

Before the county judge was suspended, the commissioners court, consisting of himself, one of the elected commissioners, and one acting in the place of one of the suspended commissioners, caused advertisements to be made for bids and plans for a court house and jail, to be erected at the town of Marfa.

At a subsequent meeting of the commissioners court, there being present T. T. Harnett, acting as county judge during the suspension of the county judge elect, two of the regular commissioners and James Ellison, Sr., who was acting under appointment from the district judge, during the suspension of one of the commissioners elect, bids to erect the buildings were considered.

At the following regular term of the commissioners court, with the same persons present as at the term at which bids were considered, contracts were made for the building of a court house and jail at Marfa, the former to cost sixty thousand dollars, and the latter twenty-six thousand dollars, which sums were to be paid in bonds of Presidio county. Some of the bonds were made out, signed by the acting county judge and by the county clerk, whose seal of office was attached thereto, and they were delivered to a contractor, after which they were presented to the county treasurer for registration.

He refused to register them, on several grounds. The main grounds of his refusal, however, were that the persons who assumed to make the contracts and to issue the bonds, had no lawful authority to do so, and because the town of Marfa had not been legally selected as the county seat of Presidio county, and that, therefore, there was no authority to incur expense in erecting a court house and jail at that place. One of the grounds on which he claimed that the county seat had not been legally removed to Marfa was that the place was not within five miles of the geographical center of Presidio county, and had received in the election held to remove the county seat less than two-thirds

of the votes cast. The town of Marfa is shown to be about twenty-two and a half-miles from the geographical°center of the county.

This proceeding to remove the county treasurer from office is based upon a charge of "official misconduct," alleged to consist in two matters specified: First, in his failure to remove his office to the town of Marfa and there to keep it; second, in his refusal to register the bonds issued to contractors for erecting the court house and jail, after he had been directed to do so by an order of the commissioners court. The appellant in his answer alleged the above stated facts, and many others, in justification of his refusal to remove his office to Marfa and to register the bonds. There was a trial and verdict against him on the two specifications above given, and a judgment was entered removing him from office. There can be no question as to the jurisdiction of the district court in this case; nor as to the jurisdiction of this court to review the proceedings had in the district court.

This proceeding is one to take from the appellant an office—a thing of value—to which he was elected by the people, and to perform the duties of which he qualified. If he was guilty of "official misconduct," as defined by law, the State has the right to have him removed, and the district court the power to ascertain whether cause for removal exists, and, if so, to remove him. In such a case the appellant has the right to show that the acts which are charged to have constituted "official misconduct" were legal acts, or, if not legal, that they were done under such circumstances as show that the acts were not willful in their character. If he can sustain the proposition that his acts were legal, any further inquiry as to his motive, or the circumstances under which the acts were committed, becomes unimportant.

It is made the duty of a county treasurer to keep his office at the county seat. (Constitution, art. 16, sec. 14; Rev. Stat., art. 706.) It is also his duty to register any bonds which may have been lawfully issued to build a court house or jail. (Gen. Laws 1881, p. 6; Gen. Laws 1884, p. 29.)

A county commissioners court is required to provide a court house and jail *at the county seat,* and has no authority to erect or purchase buildings for such purposes at any other place than the county seat. (Rev. Stat., art. 705.)

The first inquiry we will make in this case is: Did the town of Marfa become the county seat of Presidio county by the elec-

tion held on July 14, 1885, and the proceedings had under that election?

The Constitution provides that "the legislature shall pass laws regulating the manner of removing county seats; but no county seat situated within five miles of the geographical center of the county shall be removed except by a vote of two-thirds of all the electors voting on the subject. A majority of such electors, however, voting at such election, may remove a county seat from a point more than five miles from the geographical center of the county to a point within five miles from such center, in either case the center to be determined by a certificate from the commissioner of the general land office." (Const., art. 9, sec. 2.)

The Act of April 10, 1879, provides "that hereafter no county seat situated within five miles of the geographical center of any county shall be removed except by a vote of two-thirds of all the electors in said county voting on the subject; nor shall any county seat be moved from a point more than five miles from the geographical center of any county to any other point more than five miles from such center, nor from a point within five miles of the geographical center to any other point within five miles of such center, except by a two-thirds vote of all the electors in said county voting on the subject; provided, that no person shall be allowed to vote except he be a bona fide citizen of the county in which he offers to vote. A majority of said electors, however, voting at such election may remove a county seat from a point more than five miles from the geographical center of the county to a point within five miles of such center; in either event the center to be determined by a certificate from the commissioner of the general land office, in the manner hereinafter set forth." (Gen. Laws 1879, p. 84.)

The same Act contains the following provision in its seventh section: "That in the organization of any county or counties now existing or hereafter to be created by the legislature, it shall be the duty of the county judge holding the election in such new county for county officers thereof, to order an election for the location of a county seat therein, which shall be conducted in the same manner regulating the election of the officers of such new county, and the place receiving a majority of all the votes cast by the electors voting on the location of such county seat shall thereafter be the county seat of such county, subject to be removed as other county seats."

The seventh section of the Act of the tenth of April, 1879, was

amended by the Act of April 12, 1883, but the amendment consisted solely in the addition of the following proviso: "Provided, that when any county has been organized, and no county seat has been located, the county judge of such county shall order an election for the location of a county seat." (General Laws 1883, p. 82.)

The first section of the Act through which this amendment was made was as follows: "Be it enacted by the legislature of the State of Texas: That section seven of an Act entitled 'An Act to give effect to section two, Article nine, of the Constitution, regulating the manner of removing and locating county seats, and to provide for the location of county seats in organized counties where no county seat has been created by existing law,' approved April 10, 1879, be amended so as to read as follows."

The title of the Act amended was: "An act to give effect to section two, Article nine, of the Constitution, regulating the manner of removing and locating county seats." The Act of April 10, 1879, repealed all laws in conflict with its provisions, and neither it or any previous law contained any provision by which it was declared what vote should be necessary to establish a county seat in a county which had been organized, but in which no county seat had been located.

In this state of the law the legislature, on March 28, 1881, passed the following act:

"Section 1. Be it enacted by the Legislature of the State of Texas: That chapter 5, title 22, of the Revised Civil Statutes of the State of Texas, be and the same is hereby amended by adding thereto, after Article 694, another article to be known as Article 694a, which shall read as follows:

"No county seat first established in a newly organized county shall be located at any point more than five miles from the geographical center of any county in this State, unless by a two-thirds vote of all the electors voting on the subject in said county."

From this statement made of the laws regulating the location of county seats it will be seen that the Act af April 10, 1879, did not undertake to declare what vote should be necessary to locate a county seat in a county which had been organized before its passage, but provided for the location of county seats in counties to be organized which had been or might thereafter be created, and it provided that in such counties the place receiving a majority of votes cast should be the county seat.

The Act of April 12, 1883, goes no further in this respect than did the Act of April 10, 1879, but it simply provides "that when any county has been organized and no county seat has been located, the county judge of such county shall order an election for the location of a county seat," without providing in such case what proportion of the votes cast shall be necessary to determine where the county seat shall be. The act last named has no repealing clause, and unless such is its necessary effect it can not be held to repeal the Act of March 28, 1881. The Act of April 12, 1883, is the later Act, and may be held to require only a majority of the votes cast at an election for a county seat to locate the county seat of any county on its organization, but as that act does not in terms undertake to declare what proportion of the votes cast shall be necessary to locate a county seat in an organized county, in which no county seat has been fixed, the Act of March 28, 1881, has application to such a county and must govern.

The county seat to be established in an organized county, in which none has been established, is to be deemed to be "the county seat first established." Thus the two acts may stand and both have application, but to different states of fact.

The order for the election was for the removal of the county seat of Presidio county, and it may be questioned whether under an election held for such a purpose, a county seat, when none had before that time existed, could be established, but it is unnecessary to consider that question.

Treating it as a case of removal, it is evident that the votes cast were not sufficient to locate the county seat of Presidio county at Marfa; for it was not within five miles of the geographical center of the county.

There is but one instance in which, under the statutes, a county seat can be removed by a vote less than two-thirds of the entire vote cast, and that is when the county seat is to be removed from a place not within five miles of the geographical center of a county to a place within that distance of such center.

The inference to be drawn from the fact that Fort Davis was recognized for a period of ten years to be the county seat of Presidio county, it being used during all that time as a county seat, when considered in connection with the fact that in the year 1875, an election of some kind was held to locate the county seat, and that thereat Fort Davis was selected, lead almost irresistibly to the conclusion that the county seat was legally established at

Fort Davis, and that the election now under consideration, was held, as it professed to be, for the purpose of removing a county seat and not for the purpose of establishing one in an organized county in which none had been established.

A county judge, upon petition, has power to order an election to remove a county seat; and when a county has been organized and no county seat located, he has the power, without petition, to order an election to locate one. It, however, does not follow from this, after a place has been used and recognized as a county seat for a long period of time, as had Fort Davis, by the people and by the officers whose duty it was, in the first instance, to determine whether the county seat had been located, that a county judge, simply because he does not find record evidence of such location, may assume that no location has been made and order an election.

Presidio county was organized by a board of commissioners appointed by an Act of the legislature (Gen. Laws 1875, p. 109); and it is not seen that there was any law in force at the time the county was organized and at the time the election to locate the county seat was held, which required the result of the election for county seat to be made matter of record.

That the county judge had such power seems to have been with him an afterthought, which may have been suggested by the state of the vote. If, however, it be conceded, for the purposes of this case, that the county seat had never been located prior to the time the election, which took place in 1885, was had, it will not change the result; for in such case it is not to be governed by the seventh section of Act of April 10, 1879, or the amendment thereto made by the Act of April 12, 1883, but by the Act of March 28, 1881, which declares that a two-thirds vote is requisite to the location of a county seat first established in a county, unless the place selected be within five miles of the geographical center.

It may be that the true construction of the Act of March 28, 1881, and the Act of April 12, 1883, would require a two-third vote unless the place selected be within five miles of the center of the county, even in the location of county seats in counties organized after the latter Act took effect; but this case does not call for a decision of that question. The appellant was not guilty of official misconduct in refusing to keep his office at Marfa, nor in refusing to register the bonds. This conclusion renders it

unnecessary to consider any other question in the case, and necessitates a reversal of the judgment. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered December 10, 1886.