THE STATE OF TEXAS, EX REL., v. ROBERT ALCORN.

No. 3043.

1. **Rules of Supreme Court—Statement of Facts—Exhibits.**—Under 82a of Rules of Supreme Court an agreement as to facts used on the trial below and not copied into the statement of facts can not be considered for any purpose, although copied into the transcript.

2. **Official Misconduct.** — Under article 3393, Revised Statutes, defining official misconduct, is included any willful or corrupt failure, refusal, or neglect of any officer to perform any duty enjoined on him by law.

3. **Failure of District Clerk to Keep Office at County Seat.** — A failure by a district clerk to keep his office at the county seat of his county, although unlawful, still to be ground for removal it must be willful or corrupt.

4. **Willful.**—The word "willful" in Revised Statutes, article 3393, is not used in its most general sense as in obedience to the will, and an official act done or omitted can not be said to have been willful unless the officer knew or believed it was his official duty to do or omit the act, and with such knowledge or belief perversely acted or failed to act.

5. **Willful in Penal Statutes.**—It is usually held that *willful*, when used in a penal statute, means with evil intent, or without reasonable ground to believe the act lawful.

6. **Same—Penal Statute.**—The act providing for the removal of an officer for official misconduct is of a penal character, and must be construed as though it were one defining a crime and prescribing its punishment.

7. **Facts Excusing Clerk, etc.** — A district clerk holding his office at the place ordered by the county commissioners, and at a place selected as the county seat at an election for that purpose, can not be considered as willfully refusing to do his duty in not keeping his office at another place which may be in law the county seat.

8. **Same.**—While such facts would excuse a prosecution for removal because his intent then is in question, still such clerk would be liable to any one suffering loss by keeping his office elsewhere than at the place lawfully established as the county seat.

9. **Special Tribunal—Election for County Seat.**—The general rule is that an adjudication made by a special tribunal empowered to make it, from which no mode of revision is provided, is final.

10. **Organizing Counties—County Judge—Commissioners.**—Under articles 667, 668, and 672 it is made the duty of the Commissioners Court to prepare the county for an election by dividing it into precincts and naming election places. It is made the duty of the county judge to open and examine the returns and to give certificates to persons elected.

11. **Election of County Seat in Unorganized County.**—In election of county seats for unorganized counties the power to ascertain and declare the result is given by the Legislature to the county judges and not to the County Commissioners Courts.

12.   Same—Action by Commissioners Court.—The action of the Commissioners Court in declaring the result of an election for a county seat in a newly organized county would not be conclusive, nor prevent the ordering of another election.

13.   Centre of County.—Article 698, Revised Statutes (Sayles' ed.), provides how the centre of a county shall be determined and certified.   The Commissioner of the Land Office, from the maps, surveys, and other data in his office, shall designate the centre, and shall certify the same to the county judge.

14.   County Seat Not Within Five Miles of Centre. — Article 695, Revised Statutes (Sayles' ed.), which became the law by Act of July 1, 1881, provides that no county seat in a newly organized county shall be located at a distance of more than five miles from the geographical centre unless by a vote of two-thirds of the electors voting at such election.

15.   Fact Case.—In an election organizing Roberts County the Commissioners Court of Wheeler County declared the result of the election of the county officers and of the locality of the county seat.   The county seat so declared did not receive two-thirds of the votes.   *Held,* that it was competent for the county judge of Roberts County to order another election for the county seat, and to declare the result.

APPEAL from Hemphill.   Tried below before Hon. Frank Willis.   A full statement is given in the opinion.

*F. C. Milby,* District Attorney, *W. H. Grigsby, W. H. Woodman,* and *J. K. Little,* for appellant.— 1.   The court erred in refusing to sustain the plaintiff's demurrer to that portion of the defendant's answer wherein the defendant attempts to plead an excuse for his failure and refusal to hold his office at Miami, the county seat of Roberts County, Texas, for the reason that an officer can not plead and show any excuse to justify him for failure to do and perform his official duties.   Watson v. The State, 9 Texas Ct. App., 212; Gordon v. The State, 2 Texas Ct. App., 154; 1 Yates, 506.

2.   The court erred in permitting George Bennett, a witness for the defendant, to testify as to where the geographical centre of Roberts County is, for the reason that the certificate of the Commissioner of the General Land Office of this State is the way to establish that fact.   Sayles' Civ. Stats., art. 698.

3.   The court erred in permitting W. O. Davis, an attorney in this court, to testify for the defendant that prior to the conduct complained of by the defendant he, the said Davis, had advised the county judge of Roberts County and the commissioners of said county, in the presence of defendant, that Miami had not been lawfully elected the county seat, and that the County Commissioners Court had power to call an election to locate the county seat other than Miami, and that the defendant acted under the advice of the said W. O. Davis, for the reason that the evidence of said Davis was illegal and irrelevant and only calculated to mislead and confuse the jury and to frame to the jury an excuse for the willful acts of the defendant in an official capacity.   Rosc. on Crim. Ev., pp.

668, 670; 2 Sedg. on Meas. of Dam., pp. 468–470; 2 Sayles' Civ. Stats., art. 3393; Whart. Crim. Law, 3 ed., pp. 834, 835.

4. The verdict should have been set aside; the defendant knew that Miami is the county seat of Roberts County, and that that place was where he should keep his office and all the books and papers belonging to the same.

5. The court did not err in his rulings upon exceptions to defendant's amended original answer. The county seat of Roberts County when the county was first organized—it at the time being an unorganized county and the selection of a permanent county seat being submitted at the election to select officers—could be established by a majority vote more than five miles from the geographical centre; and if the matter set forth in defendant's answer was good for any purpose, it could only be relied on by defendant to show good faith, and not that Miami was not the county seat of Roberts County by a majority vote. Sayles' Civ. Stats., art. 694.

*B. M. Baker* and *Davis & Harris,* for appellee.— 1. Where there is a doubt as to which of two places is the county seat of a county, and the clerk holds his office and keeps his records at the place which he in good faith believes to be the county seat and where the terms of the Commissioners Court of the county are held, and where he is ordered by the Commissioners Court to maintain his office and keep the records of the county, though he may be in error, he is not guilty of such official misconduct, under article 3393 of the Revised Statutes, as authorizes his removal from office in a summary and quasi criminal action like this.

2. The court erred in its charge to the jury in holding that the county seat for Roberts County could be located at Miami, more than five miles from the centre of said county, by a majority vote. Rev. Stats., arts. 694, 695.

3. The court erred in ruling upon plaintiff's exception to defendant's amended original answer in effect that the county seat for Roberts County could be located at Miami, more than five miles from the geographical centre of said county, by a majority vote, and that the matters set forth in said answer could only be relied upon as showing good faith on the part of the defendant.

STAYTON, CHIEF JUSTICE.—This proceeding was instituted by the State to remove Robert Alcorn from the office of county and district clerk of Roberts County, on the ground that he had been guilty of willful official misconduct in that he had failed and refused to keep his office at the county seat of his county.

The case made by the pleadings is thus substantially stated in brief of counsel for appellee:

"The petition alleged that prior to December 20, 1888, Roberts County

was unorganized and attached to Wheeler County for judicial purposes, but that on said day a petition was filed with the Commissioners Court for Wheeler County, with the requisite number of signatures, praying for the organization of said county; and thereupon said county was organized, and that an election was held on January 10, 1889, for the election of officers of said county and location of a county seat therein; and that the returns of said election were made to the Commissioners Court of Wheeler County, and that said returns were duly canvassed by said court, the vote counted, and the town of Miami in said county declared to be selected as the county seat thereof; and that for several months thereafter the offices, as well as the terms of the District and Commissioners Courts, were held at the said town of Miami, but that the defendant had willfully for several months failed and refused to keep his office and records at Miami, but kept the same at Oran, another place in said county.

"There was attached to the petition as an exhibit a transcript of the orders of the Commissioners Court of Wheeler County, which showed that at said election the town of Miami received 111 votes, and the town of Bennett 56 votes, and that those representing the interest of said town of Bennett appeared before said court before the result was declared and proposed to show fraud in the election, and that the town of Bennett received a majority of the votes cast at said election, but the Commissioners Court refused to hear evidence of fraud, and were controlled alone by the face of the returns.

"The defendant answered that the town of Miami was more than five miles from the geographical centre of Roberts County and the town of Bennett within five miles of such centre, and the town of Miami having failed to receive two-thirds of the votes cast at said election was not and had never been the county seat. That at said election the town of Bennett in fact received a majority of the votes cast, for that at Precinct No. 2, where, according to the face of the returns, Miami received forty-eight votes and Bennett no votes, there were but two legal votes cast, the other forty-six being forged and fictitious votes, and that in said one hundred and eleven votes counted for Miami there were included thirty-seven forged and fictitious votes pretended to have been cast for said town in Precinct No. 1. That thereafter, to-wit, on the 6th day of November, 1889, the Commissioners Court of Roberts County, believing that there had been no selection for county seat, and that the county was without a permanent county seat, at a regular term of said court passed an order declaring Roberts County to be an organized county and that no permanent county seat had been selected therefor, and directing the county judge, A. A. Parsell, to order an election for the purpose of fixing and establishing a permanent county seat for said county; and said county judge pursuant to said order, on the 15th day of November, 1889, ordered an election to be held at the several voting precincts in said county for the

purpose of locating and selecting a county seat therefor, the election to take place on December 10, 1889, of which due notice was given. Pursuant to said order and notice said election was held on December 10, 1889, and the returns thereof made to the said county judge, and were by him canvassed and counted and the result thereof ascertained, declared, and entered in the minutes of said court; and that at said election the town of Oran, within less than five miles of the centre of said county, was the only candidate, and having received fifty-one votes was adjudged to be the permanent county seat for said county by an order entered upon the minutes of said court, and that the town of Oran is the same as Bennett, the name having been changed as a matter of convenience. As soon as the result of the election was declared as aforesaid the defendant was ordered by the said Commissioners Court to remove and maintain his office at said town of Oran and to keep the records of his office there, and since said order all of the offices in Roberts County have been held at Oran, as well as all the terms of the Commissioners Court, and all the records of said county have been kept at said town, and the defendant has been advised and believes that the town of Oran is in fact the county seat of said county, and that it was his duty to maintain his office there, and that if he has been in error as to his duty it was not willful or intentional."

Plaintiff excepted to the answer, and the exceptions were sustained as to that portion alleging that Miami had not been selected by two-thirds of the votes polled or even a majority of the legal votes polled, but were overruled as to that portion of the answer tending to show that the defendant acted in good faith.

The court charged the jury in substance that Miami was in fact the county seat for Roberts County, but that if the defendant in good faith believed that Oran was the county seat, and such belief was not due to negligence or fault on his part, and if pursuant to that belief he held and maintained his office at Oran, he would not be guilty of official misconduct within the meaning of the law.

It is stated in brief of counsel for appellant that it was agreed on the trial as follows:

"1. All of the allegations of facts in the petition except those charging willfulness or bad faith on the part of defendant.

"2. All of the allegations of fact in the answer except those setting up good faith of the defendant, and except that Miami is more than five miles from the centre of Roberts County," were true.

We find in the transcript what purports to be such an agreement, but it is not contained in the statement of facts nor brought before us by bill of exceptions in such manner that it can be regarded as a part of the record.

The statement of facts shows that some agreement as to proof made by the parties was offered in evidence, but that agreement was not copied

into the statement of facts, but from the record before us the statement of facts signed by the judge contained the following words: "Clerk will here copy agreement as to evidence, filed May 23, 1890, in full."

In pursuance of rule 82a the clerk has simply copied, as it was his duty to do, the statement of facts signed by the judge. The agreement found in the record can not therefore be considered for any purpose.

There was evidence other than the action of the Commissioners Court directing appellee to keep his office at Oran which tended to show that he was acting in good faith in so doing, under the belief that that place was in fact and in law the county seat of Roberts County, and under the issue submitted to the jury there was a verdict in favor of respondent.

The law makes it the duty of clerks of the District and County Courts to keep their offices at the county seats of their respective counties. Rev. Stats., art. 706.

The Constitution provides that clerks of District and County Courts may be removed from office for official misconduct. Const., art. 5, sec. 24.

The statute declares that "By 'official misconduct' as used in this title with reference to county officers is meant any unlawful behavior in relation to the duties of his office, willful in its character, of any officer entrusted in any manner with the administration of justice or the execution of the laws; and under this head of official misconduct are included any willful or corrupt failure, refusal, or neglect of any officer to perform any duty enjoined on him by law." Rev. Stats., art. 3393.

It was the duty of appellee to keep his office at the county seat, and if he willfully failed, refused, or neglected to do so was subject to removal.

The conduct of appellee, however, may have been unlawful and in a general sense may have amounted to official misconduct, but this furnished no sufficient reason for his removal from office, unless this unlawful behavior or official misconduct was willful or corrupt.

We are of opinion that the word "willful" is not used in the statute in its most general sense, for under that every act done in obedience to the will may be said to have been done willfully, even if the actor with the lights before him honestly believed that he was discharging his duty under the law, but was mistaken in this.

We are of opinion that under the statute an official act done or omitted can not be said to have been willful unless the officer knew or believed that it was his official duty to do or omit the act, and with such knowledge or belief obstinately, perversely, and with intent to do wrong acted or failed to act.

The coupling of the words "willful" and "corrupt" indicate that bad motive is necessary under the statute to make the act willful, and that the fact that the act or omission was done in obedience to the will—was intentional—is not enough.

As was said in Commonwealth v. Kneeland, 20 Pickering, 220, "the

word willfully in the ordinary sense in which it is used in statutes means not merely 'voluntarily,' but with bad purpose."

This definition was approved by the Supreme Court of the United States in Felton v. United States, 6 Otto, 702.

The same conclusion was reached in State v. Preston, 34 Wisconsin, in which many cases are cited and commented upon.

It is universally held that the word "willful" when used in a penal statute means with evil intent or without reasonable ground to believe the act lawful. Thomas v. The State, 14 Texas Ct. App., 200; Rose v. The State, 19 Texas Ct. App., 4ᶜ0; Loyd v. The State, 19 Texas Ct. App., 321; Shubert v. The State, 19 Texas Ct. App., 645; Trice v. The State, 17 Texas Ct. App., 43; Yoakum v. The State, 21 Texas Ct. App., 260; Savage v. Fullar, Brayt., 223.

The statute under consideration is one penal in character, and must be construed as though it were one defining a crime and prescribing its punishment.

If the respondent violated his official duty, whether this resulted from willful act or not, he would be responsible to any person injured thereby, for intent with which his act or refusal to act was accompanied would not be an inquiry; but when it is sought to remove him from office on account of official misconduct animus becomes an important inquiry.

No question is raised as to the sufficiency of the evidence to show that respondent refused to keep his office at Miami, in good faith believing, upon sufficient evidence to justify the belief, that Oran was in fact and in law the county seat of Roberts County, but the proposition made is that good faith could not be shown as a defense.

Here this case might end, but the parties desire a decision whether the second election held in Roberts County was legal.

The court below held that it was not, on the ground that the first election was legal and therefore, under the statute, no election to remove the county seat could be held until five years had elapsed, or as is suggested here, that the action of the County Commissioners Court in declaring the result of the first election was conclusive as to the legality and effect of the election.

In the present state of the law we are not prepared to hold that the proposition last stated is maintainable.

The general rule doubtless is that an adjudication made by a special tribunal empowered to make it, from which no mode of revision is provided, is final. Baker v. Chisholm, 3 Texas, 158; O'Docherty v. Archer, 9 Texas, 295; Arberry v. Beavers, 6 Texas, 457.

Whether there be exceptions to this general rule it is not now necessary to inquire.

The law providing for and regulating elections for county seats is very imperfect, and it is left in doubt whether it is made the duty of the Com-

missioners Court in any case to ascertain the vote and declare the result or whether it was intended to make this the duty of the county judge.

Under articles 667, 668, and 672 it is evidently made the duty of that court to prepare the county for an election by dividing it into proper precincts and naming election places, but we are inclined to the opinion that under these articles it is made the duty of the county judge to open and examine the returns, and to give certificates of election to persons elected.

He must appoint a presiding officer for each place fixed for voting by the Commissioners Court, and article 668 provides that "such presiding officers  *  *  *  shall make their returns to the county judge who ordered such election, who shall open and examine such returns and give certificates to the persons elected."

Although the language of article 672 is not so explicit as to the respective duties and powers of the Commissioners Court and the county judge, yet we are of the opinion that they are intended to be the same as in articles 667 and 668.

Articles 667 and 668 are the same as the Act of March 20, 1848, under which it was held that the power to declare the result of an election for county seat was given to the chief justice, who then sustained the same relation to the Commissioners Court that the county judge now does. Pasch. Dig., arts. 1063, 1064; Baker v. Chisholm, 3 Texas, 158.

In the election of officers no power is given to the county judge to pass upon the eligibility of candidates, but his power is simply to count the vote evidenced by the returns and to issue certificates of election to the persons who therefrom appear to be elected.

If, as contended by appellee, it requires two-thirds of the votes cast to locate a county seat at a place not within five miles of the geographical centre of the county, while a bare majority will locate it if within five miles of the centre, does the statute empower the county judge to ascertain and determine the distance from the centre of each place voted for, as well as the number of votes cast for each place, and from all these things to determine what, if any, place has been selected as the county seat?

Under the Act of March 20, 1848, his duty was simply to ascertain the vote and to declare the result, for a bare majority would then locate the county seat without reference to its distance from the centre of the county. If that was the sole power given then, do the same words, intended then only to confer that power, now confer an additional power to adjudicate a fact necessary to be determined before it can be known whether any or what place has been selected for the county seat?

The statute provides how the geographical centre of a county shall be determined when this becomes necessary or desirable as a step preliminary to the removal of a county seat (Rev. Stats., art. 698), and does not leave this to the determination of the Commissioners Court or the county

judge. It is probably true that it was the intention of the Legislature that the method provided by the statute referred to should be adopted when it became necessary to the original location of a county seat to ascertain the true locality of the centre of a county.

In any event, however, if the centre was ascertained it would be necessary to determine whether a place having a bare majority of votes cast be within five miles of that centre, if the law be as construed by appellee.

We are of opinion that all power given by the statutes referred to, to ascertain and declare the result of an election held to locate a county seat in an unorganized county, is given to the county judge, and not to the Commissioners Court.

The petition in this case alleges that the first election was ordered and the result ascertained and announced by the Commissioners Court, and the orders of that court are made exhibits to the petition and show that this is true.

The adjudication of that court does not conclude the question, and that the county judge may have been a member of that court does not affect it, for the result may have been declared by that court without even his concurrence.

A declaration of the result made by that court, the county judge participating in its proceedings and concurring in the result declared, ought to be some evidence, it may be even prima facie, of the correctness of the result announced, but it could not be deemed a conclusive adjudication.

The records of the Commissioners Court show that the declaration of result was made upon the fact that Miami received a majority, but not two-thirds, of the votes cast for county seat, and this brings us to the question whether such a vote was sufficient if that place was not within five miles of the geographical centre of the county.

Article 694, Revised Statutes, provides that "in the organization of any counties now existing or hereafter to be created by the Legislature, it shall be the duty of the county judge holding the election in such new county for officers thereof to order an election for the location of a county seat therein, which shall be conducted in the same manner regulating the election of the officers of such new county, and the place receiving a majority of all the votes cast by the electors voting on the location of the county seat shall thereafter be the county seat of such county, subject to be removed as other county seats: provided, that when any county has been organized and no county seat has been located, the county judge of such county shall order an election for the location of a county seat." This article, except the proviso, is found in the Act of April 10, 1879, and the proviso was added by the Act of July 13, 1883.

Article 694a, Revised Statutes, provides that "no county seat first established in a newly organized county shall be located at any point more

than five miles from the geographical centre of any county in this State, unless by a two-thirds vote of all the electors voting on the subject in said county."

This became the law by the Act of July 1, 1881.

These statutes were somewhat considered in the case of Caruthers v. The State, 67 Texas, 139, but the question now presented was not then decided.

We are of opinion that the proviso to article 694 was intended to confer on the county judge of a county in which officers had been elected, but no county seat located, power to order an election for county seat; and this is just the case we have before us if Miami was not, under the law, duly selected as the county seat of Roberts County.

Article 694 provides that the place receiving a majority of the votes cast shall be the county seat, and it makes no distinction on account of the distance the place so selected may be from the centre of the county.

If there were no other law this article would be conclusive of the question.

Article 694a, however, provides that no county seat *first established* in a newly organized county shall be placed at a point more than five miles from the geographical centre of the county, unless by a two-thirds vote of all electors voting.

By "first established" is evidently meant the first county seat established or located according to law in a county.

This is the last law, but it contains no clause repealing article 694, and both must stand unless there be such inconsistency in their provisions as to operate a repeal by implication.

The article last referred to, in terms, has application to the location of county seats at points distant more than five miles from the centre of a county, and it does not assume to provide for locations within that distance of the centre, but as to all such locations the former statute may and does control.

Thus may effect be given to both the articles, as it must be presumed was intended by the Legislature.

This construction is in harmony with the provision of the Constitution which regulates the removal of county seats. Const., art. 10, sec. 2.

It is conceded that Miami did not receive at the election first held two-thirds of the votes cast for county seat, and from this it follows that it was not lawfully elected if situated more than five miles from the geographical centre of the county, and that the action of the county judge in ordering the second election was strictly in accordance with the proviso attached to article 694 by the amendment of July 13, 1883, which can not be held to have affected in any manner the Act of July 1, 1881.

It is not necessary, nor would it be proper, upon the record before us for us to pass upon the question of fact whether Miami was within five

miles of the centre of the county, but from what has been said parties interested will see that the validity of the last election depends on that fact.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered November 14, 1890.