Emmett **HARPER** et al., Appellants,

v.

Wesley **TAYLOR** et al., Appellees.

No. 7421.

Court of Civil Appeals of Texas,
Beaumont.

Dec. 15, 1972.

Motion for Rehearing Overruled
Jan. 11, 1973.

Larry Germer, Orgain, Bell & Tucker, Beaumont, for appellants.

Jim Fuller, Fuller, Fuller & McPherson, Port Arthur, for appellees.

DIES, Justice.

The State of Texas, upon relation of appellees, instituted this suit to remove appellants as trustees of the Nederland Independent School District. The grounds for removal alleged incompetency as defined in Art. 5972, Vernon's Ann.Civ.St. The jury found each of the appellants incompetent and a judgment of removal followed the verdict. The judgment provided "if an appeal is taken, that this order will not become effective and the Trustees will continue in office until the Appellate process is exhausted and unless and until this order is affirmed by said Appellate Courts." Portions of the instructions to the jury and their answers appear in the footnote to this opinion.*

---

* "You are further instructed as to the law material to this cause as follows:

"DUTIES OF TRUSTEES OF AN INDEPENDENT SCHOOL DISTRICT:

"The Trustees are enjoined by law with the responsibility of providing support and maintenance of an efficient system of public free schools in the district. The Board of Trustess has the exclusive power to manage and govern the schools in its district.

"The failure of any one or more trustee to abide by his lawful duties will not excuse the failure of another.

"You are instructed that there is no legal requirement that a Board of Trustees, or the individual members thereof, go through any particular procedure

Appellees frankly admit that the single act of "incompetency" arose from the action of appellants, a majority of the Board of Trustees, in terminating the contract of the district's superintendent. This they did on June 19, 1972, by resolution. This resolution gave the superintendent the choice to accept the termination and receive his salary for the remainder of the contractual period. He chose to do this.

It is unnecessary to recount the evidence in detail. The issue of retaining or replacing this superintendent had been before the school board for a number of years. This became a political issue put forward by some candidates to the electorate of the district. Previously, the "pro-superintendent" trustees held a majority on the board, but the pendulum swung, giving the "anti-superintendent" trustees a majority, which made possible the resolution of June 19.

in arriving at a decision. Therefore, you are instructed that there was no legal requirement that the Board of Trustees or members thereof, confer with Dr. Emmett McKenzie or go through any particular procedure as to Dr. Emmett McKenzie prior to terminating his contract.

"This cause arises out of the charge that each of the Respondents is guilty of 'incompetency' as that term is defined to you below in the following particular:

"In that each of them, on or about June 19, 1972, voted for the passage of a resolution providing for the termination of the contract of employment of Emmett McKenzie, Superintendent of Schools, and the expenditure of approximately $20,-000.00 of school district funds to the said Emmett McKenzie as a result of such termination.

"To these charges each of the Respondents has answered, denying each and all of the material allegations contained therein.

"Wherever found in this charge, you are bound by the following definitions:

"By the term 'incompetency' as used herein, is meant the gross ignorance of official duties or gross carelessness in the discharge of them. And such gross carelessness is taken to be an entire want of care which raises the belief that the act or omission resulting from such gross carelessness was the result of a conscious indifference to duty and to the welfare of said school district.

"You are instructed that 'gross carelessness' means more than momentary thoughtlessness, inadvertence, or error of judgment.

"In considering the question of gross carelessness, you are instructed that if Respondents exercised even some care, however slight, then even though you do not believe their action was justified, you cannot find them guilty of gross carelessness.

"If, under all of the facts, you believe that the action taken by the Board was a reasonable action (although not necessarily the best action or the only possible reasonable action) then you cannot find gross carelessness regardless of what you believe to have been the motive of the Board of Trustees.

"You are further instructed that the action of the Board of Trustees in voting to terminate the contract of Dr. Emmett McKenzie and in voting to pay him $20,000.00 is not illegal or improper unless such action is taken by trustees as a result of conscious indifference to the welfare of said school district.

"You are instructed that a Board of Trustees of an Independent School District, in deciding whether or not to terminate a contract, is not limited in its reasons for making such determination to the grounds for discharge set forth in said contract.

"In connection with your verdict you are instructed as to the charge as follows:

"That each Respondent did, in fact, vote for the resolution in question.

"Under all the facts and circumstances admitted before you, in order to find any Respondent guilty of 'incompetency' and answer this charge as 'true', you must believe from a preponderance of the evidence that the action of such Respondent in voting for the passage of said resolution was the result of gross carelessness in the discharge of official duties.

"But, on the other hand, should you find that such action in voting for such resolution was undertaken in good faith or that such Respondent was not guilty of gross carelessness in the discharge of official duties, then with respect to such Respondent you will answer such charge as 'not true'.

"In this connection you may consider as an element of good faith, if you believe the same from a preponderance of the evidence, that a Respondent acted on advice of counsel in carrying out the particular course of conduct inquired about."

The jury answered "True" as to each of the Respondents (appellants).

Appellees in their brief summarize the contentions of the parties thusly:

"All Appellants' Points of Error One through Five present in various different ways, the same basic question, to-wit: That there was no evidence; or, in the alternative, there was insufficient evidence *to support the submission of the* case to the Jury and/or to support a finding of the Jury that the appellants are guilty of 'incompetency' under the law; and therefore, subject to removal. If this Court is prepared to hold that a majority of a Board of Trustees of a political subdivision may terminate an otherwise valid contract, thereby requiring the expenditure of district funds with no reason therefor *other than that they* have the power (by virtue of being a majority) to do so, then Appellees would readily concede that Appellants' position is correct."

■ We are not prepared to go quite as far as challenged by appellees. We do not have here a case of arbitrary, capricious or oppressive action, or the violation of any statutory duty. Instead, as admitted by appellees in oral argument, the thrust of their complaint is that appellants did not give their reasons *at the time* of the adoption of the resolution terminating the superintendent. The record is replete with reasons advanced by the appellants at the trial; and, we do not in our disposition of the case reach the question of the validity of the reasons given by appellants. The critical issue is this: Were the appellants, constituting the majority of the Board of Trustees, required, as a matter of law subject to removal for incompetency for failure, to assign reasons for their action at the time such action was taken? We think not.

■ By statutory law, "The trustees [of independent school districts] shall have the exclusive power to manage and govern the public free schools of the district." Education Code § 23.26(b), V.A.C.S. Section 23.28 of the Education Code authorizes the Board of Trustees to employ a superintendent by contract. This contract may be terminated by mutual agreement during its existence. Hardison v. Beard, 430 S.W.2d 53, 56 (Tex.Civ.App., Dallas, 1968, error ref. n.r.e.).

In our case, as above noted, the superintendent chose to accept the contract balance and depart, but he could have requested a public hearing with appeal therefrom to the State Board of Education. See Crystal City Independent School Dist. v. Briggs, 486 S.W.2d 829 (Tex.Civ.App., Beaumont, 1972, writ pending.).

Appellees have cited no statute requiring municipal governing bodies to state their reasons for taking discretionary action within their jurisdiction. There is no such legal obligation imposed by the general law. See Boynton v. Brown, 164 S.W. 893, 896 (Tex.Civ.App., San Antonio, 1914, error ref.).

■ This leaves the charge that the termination of the superintendent was politically motivated. As was said in Texas State Bd. of Examiners in Optometry v. Carp, 388 S.W.2d 409, 414 (Tex.1965):

"It was recognized long ago that in reviewing acts of administrative agencies the courts are not to investigate the methods they adopt or the *motives or purposes which prompt their action.*" (Emphasis ours.)

The late Justice Norvell in State v. Reyna, 160 Tex. 404, 333 S.W.2d 832, 838 (1960), stated in a brilliantly written decision why courts must refrain from interference in school affairs:

"Such a course could well result in handing to those engaged in local political squabbles another battle weapon which, when used, would embroil the judiciary in contests essentially political in nature and hence better left to other authorities, entities, or to the electorate itself."

In the *Reyna* case, removal of the school trustees was sought because of official

misconduct as defined in Art. 5973, V.A. C.S., and not for incompetency as defined in Art. 5972, as in our case. However, we believe the broad language and unanswerable logic of the opinion is applicable to both statutes.

> "An elective office would be subject to forfeiture should a public official, individually or as a member of a public board assume an undertaking such as the holding of an election, the allocating of public funds between various areas or departments of the district and its schools, or the adopting of a pupil placement program, and then in the opinion of a district judge or a district court jury, fail to carry out the plan or program in a fair and impartial manner. This is another way of saying that if any program be attacked as being unfair, partial or inequitable, an elected public official may be removed from office upon a judge's or jury's opinion that the charges made are true. As to such matters, the law does not purport to substitute the judgment of judge or jury for that of duly elected school officials, and in the absence of a clear mandate, the judiciary should not interfere in the operation of school districts or other local governmental agencies by removing elected public officials from office." (333 S.W.2d at 838–839)

We do not believe the case cited by appellees, Tautenhahn v. State, 334 S.W.2d 574 (Tex.Civ.App., Waco, 1960, error ref. n.r.e.), supports their position. There, the trustees had deliberately set a tax rate which was insufficient to operate the schools for the entire term, wholly disregarding their statutory duty. The court in that case quoted from the *Reyna* case:

> "'It appears from an examination of the reported cases that all those officials who have been ousted from office had clearly violated or disregarded some duty enjoined by law, generally a standard of conduct established by the legislative branch of government rather than some judicial notion of what is fair or impartial.'" (334 S.W.2d at 585)

This is a far cry from the factual basis of this record.

■ Ours is a system of checks and balances and was devised by men who feared too much concentration of power and dispersed it at some cost, at times, to efficiency in government. No division of our democracy, and no individual, be he judge or otherwise, has any monopoly on the knowledge of the route society must take to reach a better and more just way of life. When public officials manifestly violate their duty, courts must have the courage to remove them or negate their actions. But where in a discretionary decision, such as here, the most that can be said is that perhaps poor judgment was used; for the courts to fly in and substitute their judgment for that of elected officials would be to undermine the very foundation of our political system. For over the long haul, we hew to the belief that the wisdom and instincts of the electorate is preferable to any other system of government devised by man.

The remedy of appellees here is political, not judicial. The judges of appellants' actions should be the electorate of this school district, not a court or jury.

Part of Chief Justice Burger's dissent in Wright v. Council of City of Emporia, 407 U.S. 451, 477, 92 S.Ct. 2196, 2211, 33 L.Ed. 2d 51, 71 (decided June 22, 1972), bears quoting here:

> "This limitation on the discretion of the district courts involves more than polite deference to the role of local governments. Local control is not only vital to continued public support of the schools, but it is of overriding importance from an educational standpoint as well. The success of any school system depends on a vast range of factors that lie beyond the competence and power of the courts."

We sustain appellants' first three points of error; and, in so doing, we now reverse the judgment of the trial court and render the cause that the appellees take nothing by reason of this suit.

Reversed and rendered.