Candido R. DE ANDA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–03–00256–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 21, 2004.

Thomas H. Crofts, Jr., Christopher A. Lotz, Crofts & Callaway, P.C., San Antonio, James B. Davis, James B. Davis, P.C., Carrizo Springs, for Appellant.

Daniel M. Gonzalez, County Attorney, Carrizo Springs, Robert Lee Little, Asst. Dist. Attorney-293rd Judicial District, Eagle Pass, for Appellee.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by: SANDEE BRYAN MARION, Justice.

In an opinion and judgment dated December 10, 2003, we affirmed the trial court's judgment removing appellant, the former Sheriff of Dimmit County, from office for official misconduct and incompetence related to the transfer of title to five motor vehicles. Appellant filed a motion for rehearing. We vacate our earlier judgment, withdraw our earlier opinion, and issue this opinion and judgment in their place. Concluding our original analysis was correct, we overrule appellant's motion for rehearing.

Appellant challenges his removal from office in four issues on appeal. The State filed a motion to dismiss the appeal, asserting the appeal is now moot because appellant subsequently resigned as sheriff when he pled guilty to two misdemeanor charges of official misconduct involving two of the same vehicles. Appellant objects to any dismissal, asserting this court must still determine whether the trial court's judgment was erroneous when entered. We deny the State's motion to dismiss, and affirm the trial court's judgment.

## BACKGROUND

Periodically, the Dimmit County Sheriff's Department sells vehicles at public auction. Prior to the auction, appellant typically signs blank auction sales receipts. Some of the vehicles are stored, prior to the auction, at a facility owned and operated by Alfredo Puente. When an individual purchases a vehicle at auction, he goes to

the auction office, pays over his money, and the auction sales receipt is completed with the purchaser's name and address. The auction sales receipt is then given to the purchaser. If the vehicle does not sell at auction, Puente may purchase the vehicle for the amount of his towing and storage fees.

The Dimmit County Attorney's Office filed a petition to remove appellant from office for official misconduct and incompetency. The county attorney alleged appellant signed the auction sales receipts that were used to transfer title to the following four vehicles:

**1985 Lincoln Town Car:** purchased by Puente; privately re-sold to Carlos Villanueva, one of appellant's deputies; deputy's girlfriend identified Dimmit County as previous owner on application for certificate of title.

**1990 Ford pickup:** purchased by Puente; given to appellant as a gift; auction sales receipt identifies appellant's wife (Rose De Anda) as original purchaser.

**1965 Chevrolet Z-60 pickup:** purchased by Puente; auction sales receipt identifies Dimmit County as previous owner; privately re-sold by Puente to Osvaldo DeLeon.

**1989 Ford Mustang:** purchased by Puente; privately re-sold by Puente to Guadalupe Ibarra (Mary Lou Ibarra's[1] uncle).

Puente received the auction sales receipt for these vehicles he purchased at auction, but his name and address were not placed on the receipts as the purchaser. When Puente privately re-sold the vehicles, he gave the receipts to the buyers, who took them to Ibarra. Puente told Ibarra what information to place on the applications for certificate of title. All four auction sales receipts showed appellant as the authorized agent or seller of the vehicle and the private buyers as the purchasers at auction (not Puente). Applications for certificate of title completed by the private buyers showed the Dimmit County Sheriff's Department, and not Puente, as the previous owner of the vehicles. Both appellant and the State concede none of these vehicles were abandoned; however, the auction sales receipt for the 1965 Chevrolet Z-60 pickup indicates the vehicle was abandoned.

The Dimmit County Attorney's Office also filed a petition to remove appellant from office on the grounds he misused government property when he signed the certificate of title to a 1988 Chevrolet pickup, which falsely showed the Dimmit County Sheriff's Department as the previous owner. The 1988 pickup was given to the sheriff's department by the U.S. Marshall's Service. Appellant sold the truck to Puente at an auction and Puente re-sold it to Richard Garza, appellant's brother-in-law.

### THE STATE'S MOTION TO DISMISS

█ The State urges this court to dismiss the appeal as moot because, on June 18, 2003, appellant pled guilty to two misdemeanor offenses of official misconduct. Appellant argues the appeal is not moot because he will be entitled to his salary between the date of his suspension (October 26, 2001) and the date of his resignation (June 18, 2003) if this court reverses the trial court's judgment. A wrongly suspended official is entitled to be paid an amount equal to the compensation paid a temporary appointee if a final judgment establishes the official's right to office. Tex. Loc. Gov't Code Ann. § 87.017(c) (Ver-

---

1. Mary Lou Ibarra was employed in the Dimmit County Tax Assessor Collector's Office, and was responsible for vehicle title and registration and assisting with vehicle auctions.

non 1999). Because our resolution of the appeal may affect appellant's rights, we deny the State's motion to dismiss this appeal as moot. *See VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex.1993) (appeal is moot when court's action on the merits cannot affect the parties' rights).

## FINDING OF INCOMPETENCY

In his fourth issue, appellant challenges the jury's finding that he was incompetent on two grounds. First, he complains the jury charge erroneously consolidated into one question two distinct grounds for removal on the basis of incompetency (gross ignorance and gross carelessness). Appellant contends this prevented the jury from indicating which ground was sustained by the evidence and which was not. Second, appellant contends the evidence is legally and factually insufficient to support a finding of incompetency.

**Alleged Charge Error**

■ If a petition for removal "alleges more than one ground for removal, the jury shall indicate in the verdict which grounds are sustained by the evidence and which are not sustained." TEX. LOC. GOV'T CODE ANN. § 87.018(c). Under the Government Code, there are three distinct grounds for which an official may be removed, two of which apply here: incompetency or official misconduct. *See id.* § 87.013. Here, the jury charge did not combine these two distinct grounds for removal into one question. Instead, the charge asked the jury four questions on official misconduct and one question on incompetence. The question on incompetence asked whether appellant "in the discharge of his official duties as Sheriff of Dimmit County, was incompetent, as that term is hereinafter defined." The question was followed by a definition of "incompetency" that closely tracked the Government Code, which defines "incompetency"

as "(A) gross ignorance of official duties; (B) gross carelessness in the discharge of those duties; or (C) unfitness or inability to promptly and properly discharge official duties because of a serious physical or mental defect that did not exist at the time of the officer's election." TEX. LOC. GOV'T CODE ANN. § 87.011(2). Appellant's complaint here is without merit. The complained-of jury question merely submitted to the jury the definitions of incompetency, not two distinct grounds for removal.

**Sufficiency of the Evidence**

Appellant asserts he is guilty—at most—of only negligence. He contends he had no duty to establish a written protocol for conducting auction sales or to act "as a glorified babysitter" monitoring all of Puente's actions.

According to appellant, removal of an elected official from office must be based on a finding that the official acted with "evil intent." Appellant's reliance on *Meyer v. Tunks,* 360 S.W.2d 518 (Tex.1962) (orig. proceeding) and *State ex rel. Edwards v. Reyna,* 160 Tex. 404, 333 S.W.2d 832 (1960) for this argument is misplaced. Both of those cases involved the removal of an official on the grounds of misconduct, not incompetency. The *Meyer* court, relying on *Reyna,* held that "official misconduct must be willful or in other words with evil intent or without reasonable grounds to believe the act lawful." *Meyer,* 360 S.W.2d at 520. The holdings in these cases is consistent with the definition of "official misconduct," which contains an "intent" element. *See* TEX. LOC. GOV'T CODE ANN. § 87.011(3). However, the definition of "incompetency" contains no such requirement. *See id.* § 87.011(2); *see also Quintanilla v. State,* 23 Tex.Civ.App. 479, 480, 56 S.W. 614, 615 (1900) (no error in refusing to charge that neglect must have been willful if only ground for removal is

incompetency). Therefore, we consider only whether the evidence is sufficient to support a finding that appellant was grossly ignorant of his official duties or grossly careless in the discharge of those duties.

■ Appellant relies on the Texas Supreme Court's definition of gross negligence in *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994), for his argument that gross ignorance or gross carelessness requires proof that he "was consciously aware that his lack of expertise in title transfers and the absence of rigid oversight over Puente could result in the storage facility operator engaging in fraudulent activities." The *Moriel* Court held that a finding of gross negligence requires proof that the defendant was " 'consciously indifferent' and his or her conduct ... 'creat[ed] an extreme degree of risk.' " *Id.* at 21. We agree with appellant that a finding of incompetency requires more than mere error in judgment. *See Harper v. Taylor,* 490 S.W.2d 227, 230 (Tex.Civ. App.-Beaumont 1972, no writ); *see also Moriel,* 879 S.W.2d at 22 ("An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent."). However, "[a]n act may clearly be done honestly and in good faith, but still be grossly careless...." *Lewis v. State,* 773 S.W.2d 716, 717 (Tex.App.-Corpus Christi 1989, writ denied); *see also Stern v. State,* 869 S.W.2d 614, 623 (Tex. App.-Houston [14th Dist.] 1994, writ denied) (violation of statutory provision not necessary to support finding of incompetency). Furthermore, an official's ability to delegate responsibility to others or rely on others for the performance of their duties does not relieve the official from his responsibility "to supervise and control at least in a general way and in a reasonably efficient manner, all affairs of his office." *Huntress v. State ex rel. Todd,* 88 S.W.2d 636, 646 (Tex.Civ.App.-San Antonio 1935, writ dism'd).

■ Appellant admits he signed the blank auction sales receipts, relying on Puente to complete the required information on the form. He admitted he was not familiar with the process by which title to a vehicle was transferred. Appellant said he was not responsible for the receipts after they were given to Puente, and he did not know what Puente did with the blank receipts. He said Puente purchased vehicles at auction, although Puente was not shown as the purchaser at auction on the sales receipts.

Appellant contends that because the 1990 Ford pickup, 1985 Lincoln Town Car, 1965 Chevrolet Z–60 pickup, and 1989 Ford Mustang were not abandoned, his signature on the incomplete auction sales receipts prior to auction had no legal consequence. Appellant also contends the State cannot identify any statute compelling him to sign auction sales receipts only after an auction is concluded. Finally, appellant points the finger at Puente and Ibarra as the individuals who supplied the incorrect information on the receipts. Appellant asserts he could not have foreseen that Puente would falsify information on the sales receipts.

Gerald Fry, a regional manager for the Texas Department of Public Safety, testified that auction sales receipts are used to provide for the sale of abandoned vehicles by law enforcement agencies. The receipts are used to transfer ownership of a vehicle sold at auction to the individual or entity that purchased the vehicle at auction. The receipts are controlled documents numbered to identify to which law enforcement agency the receipt has been issued. The auction sales receipts are issued only to law enforcement agencies and only a law enforcement official may certify the receipts. Here, the receipts were all

certified by appellant. The certification indicates all the Transportation Code requirements have been satisfied. Fry said county tax offices may not transfer ownership of a vehicle unless the receipt is certified and signed by a law enforcement official. Fry said it would be improper to certify a receipt when no auction had been held or if the vehicle was not abandoned. Fry said title was transferred on the 1990 Ford pickup, 1985 Lincoln Town Car, 1965 Chevrolet Z-60 pickup, and 1989 Ford Mustang based on the auction sales receipts.

Armando Fuentes, Jr., a sergeant in the motor vehicles department of the Texas Department of Public Safety, testified it was inappropriate to use auction sales receipts if a vehicle is not sold at a public auction. He stated that if a vehicle is not abandoned, the auction sales receipt should not be used in the sale of the vehicle and it would be improper to do so. He said appellant, as sheriff and authorizing agent, was responsible for the proper use of the auction sales receipts.

Jeffrey Robertson, a Texas Ranger, investigated the title to the 1990 Ford pickup owned by Rose. He testified that the title on the 1990 Ford pickup could not have been transferred to Rose without the auction sales receipt because the title history indicated Dimmit County as the prior owner. As a result of his investigation, he developed an interest in other vehicles purportedly sold by Dimmit County, and he requested the title history on the other three vehicles. Robertson stated that the auction sales receipts for the 1990 Ford pickup, 1985 Lincoln Town Car, and 1965 Chevrolet Z-60 pickup were documents necessary to the transfer of title of these vehicles from Dimmit County to the new owners. The auction sales receipts for these vehicles indicate they were sold at an auction on a date when no auction actually occurred. Robertson said the 1988 Chevrolet pickup's title history showed appellant applied for the certificate of title on behalf of Dimmit County even though appellant sold the pickup to Puente at auction. Robertson said appellant told him "he did not keep close enough track on what Puente was doing" with the auction sales receipts.

We hold this evidence is legally and factually sufficient to support a finding of incompetency.

## CONCLUSION

Because the evidence is sufficient to support a finding of incompetency, we do not reach appellant's assertion that the evidence is insufficient to support a finding of misconduct. *See Huntress*, 88 S.W.2d at 648 (sustaining allegation of any one of charges authorizes removal). Nor do we reach the issue of whether the trial court erred by not providing the jury with guidance on how to apply the "mistake" instruction because that instruction and the additional instruction requested by appellant specifically applied only to the jury's finding on misconduct, and not incompetency. We affirm the trial court's judgment.