### TEXAS EMPLOYERS' INS. ASS'N v. FRANKUM.

### No. 11799.

Court of Civil Appeals of Texas. Galveston.

Dec. 12, 1946.

Rehearing Denied Jan. 9, 1947.

Sewell, Taylor, Morris & McGregor, of Houston (Wm. E. Junell, of Houston, of counsel), for appellant.

F. Warren Hicks, of Houston, for appellee.

GRAVES, Justice.

This appeal by appellant compensation carrier is from a judgment of the 61st District Court of Harris County, entered both in response to a jury's verdict on special issues and upon independent findings of the court itself from the pleadings and evidence, in favor of appellee-claimant for nine weeks' total disability at the rate of $20 per week, from October 18 of 1944 to December 20, 1944; and 300 weeks of permanent partial disability at the rate of $19.62 per week, from December 10 of 1943; all as the result of an injury sustained by him on December 10, 1943, in the course of his employment for the Earl McMillian 'Company, appellant's insured.

While admitting in its brief that "On December 10, 1943, the plaintiff admittedly sustained an accidental injury while in the course of his employment," appellant assails the judgment through VI points of error, which may be thus condensed:

The first two, to the effect that the jury's finding that appellee's weekly wage-earning capacity, during the existence of his partial incapacity, in answering special issue No. 9, was "$35.00 per 40-hour week," was (a) not responsive to the issue as submitted by the court, and (b) was "contrary to the undisputed evidence, or at least contrary to the overwhelming preponderance of the evidence."

Points III and IV, challenging the jury's finding, in response to special-issue No. 10, that the appellee had good cause for not filing his claim for compensation herein with the Industrial Accident Board prior

to December 23 of 1944, was (a) against the undisputed evidence, which showed as a matter of law that he did not have good cause, or (b) was unsupported by any evidence, or at least was contrary to the overwhelming preponderance of the evidence."

Points V and VI, contending that the overwhelming preponderance of the evidence showed that the appellee was neither totally nor partially incapacitated, for either of such periods, as a result of the injury so received by him on December 10 of 1943.

None of these presentments, it is determined, should be sustained. This for the over-all reason that it is clear to this court, after a painstaking review of the record in this cause, that each and all of the questions thus posed by appellant for decision here, with the single exception of its claim that the jury's answer of "$35 per 40-hour week" to issue No. 9 was not legally responsive to the court's inquiry therein, raise only such questions of fact as—under our compensation law—the trial court and the jury, on evidence before them that was sufficient, competently determined adversely to the appellant.

Wherefore, its criticism of the jury's quoted answer to special issue No. 9 will be first disposed of.

The trial court, in advance, thus—without objection upon appellant's part—defined partial incapacity:

"By the term 'partial incapacity', as used in this charge, is meant that an employee by reason of an injury sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but nevertheless is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform work of a less remunerative class than he performed prior to the injury, whereby he suffers a depreciation or reduction in his earning capacity."

It then propounded issue No. 9 in this language:

"What do you find from a preponderance of the evidence to be the plaintiff's average weekly wage earning capacity during the existence of such partial incapacity as you may have found?"

Thereupon, after full evidence, the jury answered the inquiry. It did not, as appellant's point argues, find that the appellee did not have to work more than 40 hours per week, nor that he could earn $35 by working a total of 40 hours each week; but, reasonably interpreted from a fair appraisal of the detailed evidence before it, what the jury actually found was that the appellee's average weekly wage-earning capacity during this period throughout which they had found he was partially incapacitated was $35—probably, it may be, because he would be only able to work 40 hours a week, and if that was the reason in their minds, it would have been a legitimately inferable one, since he and other witnesses testified he had really not been physically able to work longer.

The court's inquiry sought only to elicit the average weekly wage-earning capacity of the appellee during the existence of such partial incapacity in dollars and cents; it did not ask them to find how many hours a week he would have to work, nor to give any explanation of how they arrived at such sought-for amount in money.

So that, it is determined, the fact that the jury in their answer saw fit to so explain why they thought his average weekly wage-earning capacity would be $35 did not destroy their specific finding that it would be that during the existence of his partial incapacity.

In other words, it would seem to have been immaterial as to how many hours he worked, or as to how the jury arrived at the amount it was in the manner given asked to find, as long as there was evidence to support such a finding.

There is no doubt, under this court's review of the evidence, that the finding of $35 per week was fully supported by the very full testimony heard; hence it concludes that the trial court properly construed the jury's answer, and correctly disregarded the remainder of it, following that positive finding in dollars, as being

surplusage. On this point, the principle involved is thought to be supported by this court's holding in Knutson v. Brazoria County, Tex.Civ.App., 170 S.W.2d 843, loc. cit. 845, point (5), affirmed by Supreme Court, Brazona County v. Knutson, 142 Tex. 172, 176 S.W.2d 740, loc. cit. 743, point 2.

As indicated, the remaining points—in the alternative manner therein recited—make the presentments that the other challenged findings of the court and jury in the appellee's favor—that is, that he had good cause for not filing his claim with the Accident Board before he did, and that his incapacities of both degrees and durations resulted from the injury he so received on December 10 of 1943—were without any evidence to support them, or so against the overwhelming preponderance of the evidence that they should be set aside.

This court is unable to so hold; concluding rather, as presaged supra, that there was not only ample support for all the jury's findings, but, further, that this court could not properly—in the exercise of its distinctive authority—set aside any one of them as having been so against the preponderance of the evidence as to be clearly wrong. Maryland Casualty Co. v. Wilson, Tex.Civ.App., 108 S.W.2d 260, error dismissed; Texas Employers' Ins. Ass'n v. Crosby, Tex.Civ.App., 123 S.W.2d 743, loc. cit. 744, col. 2, point 3; Hranicky v. Trojanowsky, Tex.Civ.App., 153 S.W. 2d 649, loc. cit. 653, error refused; Great American Indem. Co. v. Beaupre, Tex. Civ.App., 191 S.W.2d 883, loc. cit. 885, col. 2, point (3), error refused N.R.E.

While it would exceed the requirements for this court to detail, or undertake an adequate résumé of the extensive body of the evidence supporting the jury's finding of good cause under special issue 10, this digest of the controlling features thereof is quoted with approval from the appellee's brief:

"Appellee testified that when he went to see Dr. Rollins, the appellant's doctor, on December 10, 1943, after the auto fell on him the same day in the McMillian Company's shop, the Doctor stripped him, checked the bruised places, and told him there was nothing he could see more than bruises, and that if he felt like it he could go back to work, as he didn't see anything serious; that Dr. Rollins put tape across his hip and said it was just bruised; that he had been to Dr. Rollins lots of times and 'I couldn't hardly go against him; that Dr. Rollins had told him right before; that he relied on Dr. Rollins, and thought it was muscles in his back that were bruised up.' That between the time he saw the Insurance Company doctor on December 10, 1943, and the time he went to Dr. Ledbetter in October, 1944, he went to see an Osteopath and took treatments from him; that the Osteopath told him he had muscle bruises, that that was the only cause they could see, and if he would keep up the treatment he would get all right; that he did not learn that he had an injury to his back until he went to see Dr. Ledbetter on October 10, or 11, 1944; that that was the first time that he really found out or any doctor told him there was anything wrong with his back; that he saw Dr. Joe B. Foster the first time in July, 1944; that Dr. Foster saw him at Methodist Hospital, X-rayed his back, and didn't find anything; that Dr. Foster said it was just bruises, and said that if he felt like it, to go back to work; that he, Dr. Foster, didn't see anything seriously wrong with his back; that the first time he knew there was anything seriously wrong with his back was when he went to see Dr. Ledbetter; that Dr. Ledbetter telephoned Earl McMillian, his employer; that while he was in the hospital, his foreman came to the hospital and told him not to worry about anything, that the Company had insurance and his bills would be paid; that he first learned that the insurance company was not going to take care of his injuries just after he got out of the hospital and he then went to see his lawyer and filed his claim; that he saw Dr. Foster the first time in July, 1944; that although he didn't go to see a doctor between the time Dr. Rollins saw him on December 10, 1943, and the time Dr. Foster saw him in July, 1944, he talked to two or three of

them about what was the matter, that sometimes he would go a month before he lifted anything; that he was doing light work in the hopes he would get to where he could do heavy work; that the other workers complained about his doing light work and drawing the same money and to keep them from fussing at the foreman he tried to do heavy work but could not do it; that he did not realize that he had anything more than bruises; that the doctors told him he only had bruises and that he could get better unless he did heavy work or put in too long hours; that all he had was a bad bruise and minor cuts; that he needed the money and went back to work; that he had been to Dr. Rollins a lot of times and he relied on what he told him; that when he would do light work for a week or ten days he would get to where he didn't even notice it unless he stooped; that as long as he did light work he was able to do it; that he went to an Osteopath over on West Alabama, and he also went to an Osteopath on Louisiana and Lamar by the name of Dr. Cunningham; that he told them how he hurt, they examined him, and told him the muscles had been bruised and they could fix him up with a few treatments; that he saw this doctor in August, 1944, and the doctor on West Alabama on October 3, 1944.

"Dr. Joe B. Foster, who performed the operation on plaintiff in October, 1944, for a herniated nucleun pulposis, in discussing the varying histories in the case of a herniated nucleus pulposis testified: that some of them have periods when they get perfectly comfortable; that one of the first discs he ever removed he watched the patient over six months' time before he was willing to make a positive diagnosis; that a person may go about his work and then something hit him again; that between these periods they may be quite comfortable and then they get some discomfort in their back; that that condition could extend over a period of nine months or a year before the final blow struck that necessitated an operation; that he has operated on people who have had the trouble seven years.

"Dr. Rollins who examined plaintiff for the appellant on December 10, 1943, did not testify."

Under the evidence quoted, and these Texas decisions, the jury's verdict and the court's judgment thereon finding good cause under our compensation law must be upheld: American General Ins. Co. v. Amerson, Tex.Civ.App., 187 S.W.2d 912, loc. cit. 915, col. 1, par. (4, 5); Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80; American Mut. Liability Ins. Co. v. Wedgeworth, 140 S.W.2d 213, error dismissed, "Correct Judgment"; Texas Employers Ins. Ass'n v. Fowler, 140 S.W.2d 545, writ of error refused; Consolidated Underwriters v. Pruitt, Tex.Civ.App., 180 S.W.2d 461, error refused w.m.; Traders & General Ins. Co. v. Jaques, 131 S.W.2d 133, writ dismissed, correct judgment, loc. cit. 135, col. 2, points (3–5).

Appellant's statement in support of its Points V and VI so contending—notwithstanding the jury's findings Nos. 2 and 5 that appellee had sustained both the total and permanent partial incapacities to work for the respective periods therein specified "on account of the injury received by him on or about December 10, 1943, while in the employ of Earl McMillian Company"—may be conceded to have raised a fact-issue over whether such incapacities had been attributable to an injury he sustained in a wrestling match with his nephew at his home on or about July 29 of 1944, and not to the automobile accident, as the jury found; but a close examination of the statement of facts in that respect shows that no more if as much as such a question of fact, was thereby raised. This for the reason that the appellee adduced evidence going into every phase of the controversy upon that feature, the trial court having permitted it to be fully developed before submitting issues Nos. 2 and 5.

It is deemed unnecessary to detail that testimony here, since—in the opinion of this court—it showed the overwhelming preponderance of the evidence upon that issue to be in favor of rather than

against the jury's findings that 'both incapacities had been the'result of the injury on December 10 of 1943, admitted by the appellant to have occurred in the course of·appellee's employment for the McMillian Company. These authorities are cited in support of this holding: Texas Employers Ins. Ass'n v. Morgan, Tex.Civ.App., 187 S.W.2d 603, loc. cit. 604, col. 2, point 2; Maryland Casualty Co. v. Pedraza, Tex. Civ.App., 107 S.W.2d 624, point 1; Hranicky v. Trojanowsky, Tex.Civ.App., 153 S.W.2d 649; Great American Indem. Co. v. Beaupre, Tex.Civ.App., 191 S.W.2d 883; Associated Employers' Lloyds v. Self, Tex. Civ.App., 192 S.W.2d 902, loc. cit. 904, points (3–4), and cases cited in opinion; Associated Employers' Lloyds v. Groce, Tex.!Civ.App., 194 S.W.2d 103, loc. cit. 109, point (6).

It follows from these conclusions that the judgment should be affirmed. It will be so ordered.

Affirmed.