TEXAS EMPLOYERS' INSURANCE ASSOCIATION V.
ARTHUR LEE FRANKUM.

No. A-1166. Decided April 23, 1947.
Rehearing overruled May 21, 1947.
(201 S. W., 2d Series, 800.)

*Sewell, Taylor, Morris & McGregor* and *Wm. E. Junell,* all of Houston, and *Black, Graves & Stayton,* of Austin, for petitioner.

The jury's finding that respondent's average weekly wage-earning capacity after he became incapacitated was "thirty-five dollars per 40 hour week" will not support a judgment for re-

spondent because such finding is not responsive to the special issue submitted, is irrevelant, ambiguous, uncertain and indefinite and is not supported by the evidence. Petroleum Casualty Co. v. Williams, 15 S. W. (2d) 553; Moore v. Moore, 67 Texas 293, 3 S. W. 284; Northern Texas Traction Co. v. Armour & Co. 116 Texas 176, 288 S. W. 145.

*F. Warren Hicks*, of Houston, for respondent.

It was not error for the trial court to award compensation to the respondent as they did and the answer to the special issue that his average weekly wage during the period of his partial incapacity was thirty-five dollars per forty hour week was responsive to the issue submitted, as interpreted by the trial court and the court of civil appeals, and simply meant that his average weekly earning capacity was thirty-five dollars per week, it being immaterial as to how many hours he worked or as to how the jury arrived at that amount, so long as the evidence supported that finding. Knutson v. Brazoria County, 170 S. W. (2d) 843; Employers Reinsurance Corp. v. Jones, 195 S. W. 2d) 810; American Gen. Ins. Co. v. Amerson, 187 S. W. (2d) 912.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is a suit for workmen's compensation filed by Arthur Lee Frankum, respondent, against Texas Employers' Insurance Association, petitioner. A jury verdict on special issues resulted in a trial court judgment for respondent for 9 weeks total disability and 300 weeks permanent partial disability. That judgment was affirmed by the court of civil appeals. 198 S. W. (2d) 484.

Respondent's alleged partial incapacity to work was submitted in the usual form, and the jury found that his injuries resulted in a partial incapacity to work, which would be permanent. However, in answer to the issue as to his average wage-earning capacity during this partial incapacity, the jury answered "thirty five dollars per 40 hr. week."

Petitioner contends that the trial court erred in rendering judgment for compensation for permanent partial disability on that finding because the answer (1) was not responsive to the issue submitted and therefore not a finding as to respondent's actual weekly wage-earning capacity and (2) was so ambiguous, uncertain and indefinite that it will not support the judgment.

■  As early as Thompson et al v. Tinnin, 25 Texas Sup., 56,

this court recognized that a jury verdict on special issues must be responsive and complete, considering the objects of the suit; that is (subject to Rule 279, T. R. C. P., which is not involved here), the verdict must ascertain the facts in issue before it will authorize a trial court to dispose of the cause by final judgment. Moreover, when a verdict appears to be ambiguous this court will look to the evidence to determine whether it settled the substantive facts in dispute; and if it does not, judgment thereon will not be permitted to stand. Pecos & N. T. Ry. Co. v. R. R. Commission of Texas (Civ. App.), 193 S. W., 770 (er. ref.); Humble Oil & Refg. Co. et al v. Pritchett (Civ. App.), 25 S. W. (2d) 909 (er. ref.). In other words, "The validity of the verdict is determined from the pleadings and the issues on which it is based, and it follows that in order to be sufficient a verdict must respond substantially to all the material issues made up between the parties, and if it varies substantially from the issue or issues or finds only a part of that which is in issue, the verdict is bad. Not only should the jury find on all the issues essential to a proper determination of the rights of the parties, but they must pass directly on the issues and not evade them by an argumentative finding." 53 Am. Jur., Trial, p. 717, Sec. 1037.

■ Under the provisions of Sec. 11, Art. 8306, R. S., 1925, before a valid judgment could be entered for respondent the court had to know (1) his average weekly wages before injury and (2) his average weekly wage-earning capacity after injury and during his incapacity. The first question was settled by stipulation that his "average weekly wage earning capacity" during the year immediately preceding his injury was $67.70. But his avarage weekly wage-earning capacity after injury was a disputed issue, and if it was not validly determined by the answer "thirty five dollars per 40 hr. week" the trial court had no figures to subtract from $67.70 and no remainder to multiply by 60 per cent so as to fix the compensation due respondent.

■ We are convinced that respondent's average weekly wage-earning capacity after injury was not determined by the findings that it was $35.00 per forty-hour week. The jury may have meant that forty hours per week is all that any employee should work or they may have meant that forty hours per week was all that respondent was physically able to work. If they meant to say that forty hours is the proper work week, they were attempting to deal with a matter beyond their province. What constitutes a proper work week is exclusively a matter for the Legislature, which it has determined by Secs. 1 and 5, Art. 8309,

R. S., 1925. By that statute the Legislature has said that a work year is 300 days, Petroleum Casualty Co. v. Williams (Com. App.), 15 S. W. (2d) 553; and, excluding Sundays but not legal holidays, that necessarily means that a work week is 6 days, under the Workmen's Compensation Act. So, if public policy would now be best served by a forty-hour work week, it is for the Legislature—not for a jury or this Court—to say so.

If the jury meant to say that forty hours per week was all respondent was physically able to work, they were attempting to fix a limitation that was not pleaded, proved or submitted to them. Respondent did not claim that he was unable to work more than forty hours per week; his claim was that because of his injuries he could not do heavy garage work as he formerly did but could do only the lighter work with the aid of a helper. This is clearly shown by his own testimony, under direct examination by his own counsel, as follows:

"Q. Do you know how much Johnnie Luecke (an uninjured fellow worker) is making on the flat rate basis? A. Some of his checks was $115.00 and some $125.00.

"Q. A week? A. Yes, sir, by himself.

"Q. I will ask you *is he working more or less or the same amount* of hours you are working? A. *He works less, a whole lot less.*

"Q. How many hours a day is he working? A. *He will put in his eight hours* and he checks out.

"Q. How many hours a week are you working down there to make this $75.00 a week. A. *I go sometimes to nine o'clock at night. I go to work at seven and work until nine or later at night.*

"Q. Why do you work more than the other fellows? A. Because I can't do much work. I have to take mine slow. I hurt too bad, I am not strong enough to do it, but I have got to make it." (Italics ours.)

Therefore, we think it is clear that if respondent's average weekly wage-earning capacity after injury was $35.00 for a week of forty hours, as found by the jury, then it might be more for the hours per week he actually did work, as testified to by himself; which event there would be a larger sum to subtract from $67.70 and a smaller sum than $19.62 per week compensation to be paid him as adjudged by the trial court, after the remainder is multiplied by 60 per cent. And it follows that the jury's "40-hr. week" answer cannot be treated as surplusage. Rather it must be regarded as incomplete, considering the objects of this suit, and as failing to ascertain the facts in issue,

under Thompson et al v. Tinnin, supra. We recognize, of course, that it was the province of the jury to determine respondent's average weekly wage-earning capacity in the light of the testimony as to his disability and that they were not restricted to what he actually made in his disabled condition. What we hold is that when they attempted to fix his earning capacity under the limitation of a forty-hour week when no such limitation was claimed by respondent or supported by the evidence, their answer was not responsive and did not determine the issue submitted to them.

We are not overlooking the fact that on direct examination respondent did testify as follows:

"Q. Now with the helper, on the flat basis how much have you been able to average? A. I believe I average about $75.00.

"Q. But if you were working on the same basis, on the hourly basis that you had been working at the time you got hurt, how much would you be making? A. I would be putting in about eight hours a day, that would be about $35.00 a week, something like that."

But, under the record, he simply was mistaken in his arithmetic, because he also testified that during the year before he was hurt he worked six days a week at ninety-five cents an hour. So, under his own testimony, respondent would be working at least forty-eight hours a week, which, at ninety-five cents an hour, would be $45.60 per week and not $35.00.

■ Petitioner's other point is that there is no evidence to support the jury's finding that respondent, injured on December 10, 1943, had good cause for not filing his claim with the Industrial Accident Board prior to December 23, 1944.

On the day of his injury respondent went to see the insurance company doctor, in whom he had confidence and upon whom he relied. That doctor stripped respondent, said he could see no more than bruises, taped respondent's bruised hip and told him he could go back to work if he felt like it. Thereafter respondent consulted an osteopath who said he had only muscle bruises, treated him and gave him about the same advice as the company doctor did. In July, 1944, respondent consulted a second doctor who X-rayed his back, said he was suffering only from bruises with no serious trouble with his back, and told him to resume work if he felt like it. Respondent testified he was doing light work all this time in the hope that he would get well and able

to resume his former full duties; that on October 10 or 11, 1944, he consulted a third doctor, was again X-rayed and then for the first time learned that he had a serious back injury; that it was after he was operated on and left the hospital that he learned that the insurance company was not going to pay him anything; that he then went to his lawyer and filed his claim. We hold this was some evidence in support of the jury's finding. A parallel case is Texas Employers' Insurance Association v. Roberts, 135 Texas, 123, 139 S. W. (2d) 80, which discusses this question at length and cites and reviews numerous authorities. The point is overruled.

Because of the vice in the jury's verdict as above discussed, both judgments below are reversed and this cause is remanded to the district court for a new trial.

Opinion delivered April 23, 1947.

MR. JUSTICE SLATTON dissenting.

In my opinion the lower courts properly disregarded a part of the findings of the jury as surplusage. See 198 S. W. (2d) 484.

Opinion delivered April 23, 1947.

Associate Justice Taylor concurs in this dissent.

Rehearing overrluled May 21, 1947.