Carl H. TAUTENHAHN, Harry F. Ammons, Robert L. Whitmarsh, Appellants,

v.

STATE of Texas ex rel. Charles C. NICHOLS et al., Appellees.

No. 3718.

Court of Civil Appeals of Texas.

Waco.

March 31, 1960.

Rehearing Denied April 21, 1960.

Sonfield & Sonfield, Robert L. Sonfield, Houston, for appellants.

Hill, Lowry, Lee & Koster, Billy E. Lee, Houston, for appellees.

TIREY, Justice.

The action is one for the removal of each of the respondents from their office as trustees of the Aldine Independent School District of Harris County. The State of Texas, acting by and through Hon. Tom Resweber, County Attorney, of Harris County, brought the action upon the relation of Charles C. Nichols, W. B. Lauderdale, Ernest B. Pate, and Chester W. Sanders, and the petition prayed for the entry of an order directing the issuance of citation and service on Harry F. Ammons, Carl H. Tautenhahn, and Robert L. Whitmarsh, the action having been brought under Provisions of Title 100 of the Revised Civil Statutes, Vernon's Ann.Civ.St., and particularly Articles 5972 to 5982, inclusive, and the amendments thereto. A separate suit was filed against each respondent and in each petition the relators set out certain acts of each of the respondents as grounds for the removal of each respondent, and specifically alleged that these acts of the respondents resulted in the closing of the Aldine School, and that it remained closed. The causes were consolidated over respondents' objections, and the case was tried to a jury which returned a verdict finding each of the respondents guilty of two of the charges made against each of them and upon such jury finding the Court removed each respondent

from the office and appointed a successor to each.

This record is voluminous and does not yield to a simple statement. The relators went to trial on their original petition. They did not replead after the Court consolidated these cases. We quote the pertinent parts of allegations alleged against respondent Tautenhahn:

"* * * that defendant, Carl H. Tautenhahn has been guilty of incompetency and official misconduct in the discharge of the official duties of his office as Trustee of the Aldine Independent School District in the following enumerated instances:

"1. By voting the adoption of a $1.59 school budget for the 1958–1959 school year coupled with voting the adoption of a $1.35 tax levy, with knowledge that no surplus of unexpended funds remained from the operations of the District in preceding years, but to the contrary, a deficit existed at the beginning of the 1958–1959 school year, all of which allegations can and will be shown from the official minutes of the meetings of the Board of Trustees at the trial hereof.

"2. By refusing to recognize the holdings of Courts of proper jurisdiction No. 516,502 in the 129th Judicial District Court, affirmed in No. 13,437 in the Court of Civil Appeals of the First Supreme Judicial District in Houston, each being entitled Robert L. Whitmarsh, et al. v. Jack B. Buckley, et al., that his associate Board members, Jack B. Buckley and Rick Cass, are duly qualified members of said Board pending the final determination of the present boundaries of the Aldine Independent School District, but, with complete disregard for and disrespect of the established judicial processes for settlement of disputes, this defendant has, by his vote, given notice to the School depository that members

Buckley and Cass have been deposed and ousted, and, by his unofficial and illegal action has succeeded in tying up the finances necessary for the operations of the classrooms of the District.

"3. On May 14, 1959, the Court of Civil Appeals in Houston handed down its ruling in Cause No. 13,437, entitled Robert L. Whitmarsh, et al., appellants, v. Jack B. Buckley, et al, appellees [324 S.W.2d 298], on the motion for rehearing in the cause alleged in the preceding paragraph, in effect holding that said Buckley and Cass were de facto officers entitled to serve pending a final determination adverse to them in a quo warranto proceeding. With complete disregard for and disrespect of the established judicial processes for settlement of this problem, this defendant has continued in his notice to the School depository that members Buckley and Cass are not lawful and proper officers of the District with authority to sign drafts drawn against the school deposits held by the school depository, so that for the protection of its interests, the said depository has refused to honor any drafts drawn against the school deposits, which drafts are necessary for the operations of the classrooms of the Districts.

\*    \*    \*    \*    \*    \*

"The acts enumerated in the foregoing paragraph, resulting in the complete paralysis and shutdown of the classrooms of the School District, forcing the children out of the halls of education onto the streets and thoroughfares with substantial and irreparable damage to their educational careers, as well as seriously dislocating the economy of the community by withdrawing anticipated income from the classroom teachers of the District, do, each of them, constitute incompetency and gross carelessness in the discharge of this defendant's official duties, and

further, each such act alleged constitutes an instance of official misconduct in relation to the duties of his office."

They prayed for the removal of the trustee instanter, and for an appointment to fill the vacancy, and for general relief.

Plaintiffs' original petition against respondents, Whitmarsh and Ammons, is substantially as they alleged against Tautenhahn.

Article 5978, R.C.S., requires the Court to submit the controversy on a general charge, and he did so. We quote the pertinent parts of this Charge:

"This cause arises out of the charges by the State that each of the Respondents is guilty of 'Official Misconduct' and 'Incompetency,' as those terms are defined to you below in the following particulars:

"1. In that each of them voted the adoption of a $1.35 tax levy for the 1958–1959 school year for the School District while serving as a duly qualified Trustee for the District.

"2. In that each of them by his vote on a certain Resolution (Relators' Exhibit No. 9) delivered to the School Depository, The National Bank of Commerce, caused conflicting signature cards which made the funds unavailable for the payment of obligations of the District.

"3. In that Respondent, Robert L. Whitmarsh, refused to give effect to the opinion of the Court of Civil Appeals for the First Supreme Judicial District of Texas, rendered on May 14, 1959, (Relators' Exhibit No. 24) by thereafter continuing his notice to the Bank that he did not agree that Richard G. Cass was authorized to sign checks of the District against its funds on deposit, resulting in the continued unavailability of such funds.

"4. In that each of them, by his conduct exhibited sometime between September 19, 1958 and May 15, 1959, failed to accept Richard G. Cass as a Trustee of the

District, having a right to serve as a Member of the Board of Trustees.

"To these charges each of the Respondents has answered, denying each and all of the material allegations contained therein.

"Wherever found in this charge you are bound by the following definitions:

"By the term 'Incompetency,' as used herein, is meant gross ignorance of official duties or gross carelessness in the discharge of them. And such gross carelessness is taken to be an entire want of care which raises the belief that the act or omission resulting from such gross carelessness was the result of a conscious indifference to duty and to the welfare of said School District.

"By the term 'Official Misconduct,' as used herein, is meant any unlawful behavior in relation to the duties of office of any Respondent as Trustee of the Aldine Independent School District, which unlawful behavior is *wilfull* in its character; and the term 'Official Misconduct' includes any willful or corrupt failure, refusal or neglect of a School Board Trustee to perform any duty enjoined upon him by law. In this connection you are instructed that the term willful conduct or neglect is such as is motivated by some improper, corrupt or unlawful purpose or objective, or with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful, or characterized by obstinacy, stubborness or perversity. You are further instructed as to the law material to this cause as follows:

"*Duties of Trustees of an Independent School District*:

"The Trustees, together with legislative enactments of the State, including grants of funds for public education, are enjoined by law with the responsibility of providing support and maintenance of an efficient system of public free schools in the District. The Board of Trustees has the exclusive power to manage and govern the schools in its District.

"The Trustees are forbidden by law to create obligations against the District which cannot be satisfied out of assets on hand available for such obligations or receipts anticipated for the school year available and to be available for the discharge of such obligations.

"The Trustees are charged with the duty of fixing a tax levy for each school year.

"The Trustees are bound to abide by the policies of the Board of which they are members. The failure of any one of more Trustee to abide by his lawful duties will not excuse the failure of another.

"*General Instructions as to the law material to this cause:*

"In your deliberations you must not discuss nor consider anything that has not been placed in evidence before you; and you shall not discuss nor consider what effect any of your answers may have upon the rights of the parties, nor the judgment that may be rendered by this Court in this cause, as it will be the duty of the Court to determine these matters.

"You are instructed that you are not to reach a verdict in this cause by any species of lot or chance, or any sort of agreement other than your fair consideration of the evidence admitted before you; and you shall not discuss or consider in your deliberations any matters whatsoever (other than from the evidence admitted before you) that you may personally know about the facts of the case or that any of your fellows may know, to the end that your findings may truly represent your deliberate conclusions, based upon a fair consideration of the evidence under these instructions.

"By the term 'Preponderance of the evidence,' as used in this Charge, is meant

the greater weight and degree of credible evidence before you.

"You are instructed with respect to the acts of School Trustees that the law presumes that all public officers will discharge the official duties enjoined upon them by law, but this presumption may be rebutted by facts and circumstances to the contrary.

"You are instructed that no power or function entrusted to a Board consisting of a number of persons can be legally exercised without notice to all the members composing such Board.

"You are instructed that the State has the burden of proving such charges by a preponderance of the evidence.

"Keep in mind you are presented charges against three separate Respondents, each of which must stand or fall upon its own merits, or lack thereof. You must not attempt to do any trading on your answers; that is, some agreeing to answer one charge in one manner against one Respondent, if others will answer another charge in a particular manner.

"Be certain that you do not allow yourself to be influenced by evidence pertaining to one respondent in determining a charge against another respondent. Likewise, you are cautioned not to be influenced by the merit or lack thereof of any of the actions of other Trustees of the Aldine Independent School District who are not parties to these proceedings in arriving at your answers to the charges submitted to you.

"Keeping in mind the foregoing definitions and instructions, and referring to them as often as may be necessary in your deliberations you shall for your verdict make answer as to each of the Respondents, whether the charge or charges set forth are true in point of fact, or not, and you shall for your verdict say which charge or charges, if any, you find sustained by the evidence before you, and which, if any, are not sustained.

"In connection with your verdict, you are instructed as to Charge No. 1 as follows: That each Respondent did in fact vote for such tax rate while a Trustee for the District.

"Under all the facts and circumstances admitted before you, in order to find any respondent guilty of 'incompetency' and answer this charge as 'True', you must believe from a preponderance of the evidence that such tax rate was insufficient to provide for the suitable support and maintenance of an efficient system of public free schools in the district, taking into account such sums reasonably expected from the State for such school year, or that the tax rate was insufficient to meet the foreseeable obligations of the school district for the school year 1958–1959 and that the action of such respondent in voting for the establishment of such tax rate was the result of gross carelessness in the discharge of official duties.

"But, on the other hand, should you find that his vote on such tax rate was in good faith and such respondent was not guilty of gross carelessness in the discharge of official duties, then with respect to such respondent you will answer such charge as 'Not true.'

"Under all the facts and circumstances admitted before you, in order to find any respondent guilty of 'official Misconduct,' and answer this charge as 'True,' you must believe from a preponderance of the evidence that such tax rate was insufficient to provide for the suitable support and maintenance of an efficient system of public free schools in the district, taking into account such sums reasonably expected from the State for such school year, or that the tax rate was insufficient to meet the foreseeable obligations of the school district for

the school year 1958–1959 and that the action of such respondent in voting for the establishment of such tax rate was Official Misconduct, as that term has been hereinbefore defined.

"But, on the other hand, should you find that such tax rate was voted in good faith and that such respondent was not guilty of Official Misconduct, as that term has been hereinbefore defined, then you will answer such charge as 'Not true.'

"In connection with your verdict, you are instructed as to Charge No. 2 as follows: That each respondent did in fact vote for such Resolution requiring a new signature card and caused the same to be delivered to the bank while a Trustee for the District. Further, you are instructed that the Bank acted lawfully in refusing to honor either of the conflicting signature cards.

"Under all the facts and circumstances admitted before you, in order to find any respondent guilty of 'Incompetency' and answer this charge as 'True,' you must believe from a preponderance of the evidence that the action of such respondent in voting for passage of said resolution or in issuing said new signature card to the National Bank of Commerce was the result of gross carelessness in the discharge of official duties.

"But, on the other hand, should you find that such action resulting in the issuance of a new signature card to the National Bank of Commerce was undertaken in good faith and that such respondent was not guilty of gross carelessness in the discharge of official duties then with respect to such respondent you will answer such charge as 'Not true.'

"In this connection you may consider as an element of good faith, if you believe the same from a preponderance of the evidence, that a respondent acted on advice of Counsel in carrying out the particular course of conduct inquired about.

"In considering the defense of good faith you may consider the fact that the Opinion of the Court of Civil Appeals (Respondents' Exhibit No. 4) was not the final Opinion of that Court.

"Under all the facts and circumstances admitted before you, in order to find any respondent guilty of 'Official Misconduct' and answer this charge as 'True', you must believe from a preponderance of the evidence that the action of such respondent in voting for passage of said resolution or in issuing said new signature card to the National Bank of Commerce was the result of Official Misconduct, as that term is hereinbefore defined.

"But, on the other hand, should you find that such action resulting in the issuance of a new signature card to the National Bank of Commerce was undertaken in good faith and that such respondent was not guilty of such conduct or such failure to perform said duty, you will answer such charge as 'Not true.'

"In this connection you may consider as an element of good faith, if you believe the same from a preponderance of the evidence, that a respondent acted on advice of Counsel in carrying out the particular course of conduct inquired about.

"In considering the defense of good faith you may consider the fact that the Opinion of the Court of Civil Appeals (Respondents' Exhibit No. 4) was not the final Opinion of that Court."

Inasmuch as the jury did not answer Issues 3 and 4 we have omitted the special instructions relating to Issues 3 and 4.

The Court prepared an answering sheet for the jury on which to write its verdict, and we quote this sheet showing the verdict of the jury:

"Consolidated Cause

"No. 528,285

| "The State of Texas, ex rel. Ernest D. Pate, W. B. Lauderdale, Charles C. Nichols, Chester W. Sanders, et al., Vs. Carl H. Tautenhahn | In the District Court of Harris County, Texas 129th Judicial District |

"Answer Sheet

|  | 'True' or 'Not true.' | 'Supported by the evidence' or 'Not supported by the evidence.' |
|---|---|---|
| **"Charge No. 1.** | | |
| "Robert L. Whitmarsh: | True | Evidence and Testimony |
| "Harry F. Ammons: | True | (check mark) |
| "Carl H. Tautenhahn: | True | (check mark) |
| **"Charge No. 2.** | | |
| "Robert L. Whitmarsh: | True | Evidence and Testimony |
| "Harry F. Ammons: | True | (check mark) |
| "Carl H. Tautenhahn: | True | (check mark) |
| **"Charge No. 3.** | | |
| "Robert L. Whitmarsh: | ——— | ——— |
| **"Charge No. 4.** | | |
| "Robert L. Whitmarsh: | ——— | ——— |
| "Harry F. Ammons: | ——— | ——— |
| "Carl H. Tautenhahn: | ——— | ——— |

"We, the Jury, have answered the charges as indicated above and herewith tender this answer sheet as our verdict as indicated.

"/s/ C. K. Dildy
Foreman."

Respondents presented their Motion for Instructed Verdict when relators rested, which the Court overruled, and tendered another Motion for Instructed Verdict after the evidence was closed, which was overruled. The Court also overruled all the Special Charges tendered by respondents.

The judgment is assailed on what appellants designate as 39 Points. Points 1, 2 and 3 are substantially to the effect that the Court erred:

(1) In forcing the respondents to trial on May 26, 1959, because the citations issued by the District Clerk in each cause was served on respondents on the 18th day of May, 1959, and each citation required each respondent to appear and answer on Monday after the expiration of 20 days from the date of service:

(2 and 3) Notwithstanding the order signed by the District Judge in each of these suits required respondents to appear and answer on May 26, 1959, since the

Clerk issued the citation requiring them to answer Monday after the expiration of 20 days from the date of service, the Court was without jurisdiction to force respondents into the trial of these suits on May 26, 1959, and by reason thereof the Court erred in overruling respondents' Motion for Continuance or to re-set the cause.

Article 5979, R.C.S., provides in effect that after a petition for removal of a public officer is filed, the petitioner shall make a written application to the district judge for an order for a citation and a certified copy of the said petition to be served on the officer against whom the petition is filed, requiring him at a certain day named, which day shall be fixed by the judge, to appear and answer to the said petition. In the instant cause, relators filed their petitions, then presented their written applications to a district judge for an order for citation to issue to each respective respondent. The District Judge granted such application and in such order commanded the Clerk to issue citation to each respondent commanding him to appear and answer the petition on the 26th day of May, 1959. The application to the District Judge for the order and for the citation and the order entered thereon was attached to the petition, and a copy of such instrument was attached to the copy of the petition actually served on respondents. The printed citation issued by the District Clerk had not been interlined, and said printed form commanded the person cited to appear and file written answer on or before Monday next after the expiration of twenty days after service on him of the citation. It is not quite clear from the record as to why the Honorable John E. Lewis appeared in Court representing each of the respondents on May 26th, the day that the Trial Judge had set these cases for hearing, notwithstanding the fact that the citation issued by the Clerk commanded them to appear as before stated. However, the record is clear that each of the respondents did appear by counsel, filed motions to quash citation, motions for continuance,

and each filed a general answer. The record recites that these motions were presented orally and were later reduced to writing and each was overruled and respondents were forced to trial. We have considered the record with reference to the appearances of each of the respondents, and we are of the view that under provisions of Rule 121, Texas Rules of Civil Procedure, they submitted themselves to the jurisdiction of the Court, and in so doing waived the hiatus and defect of the citations served upon them. See St. Louis & S. F. R. Co. v. Hale, 109 Tex. 251, 206 S.W. 75. See opinion of this Court, Hickey v. Sibley, Tex.Civ.App., 304 S.W.2d 165, and authorities there cited. Our view is that the matter in question constituted one of great urgency and we see no harm done to the respondents, and think that they have failed to show reversible error in this behalf under provisions of Rule 434, T.R.C.P. Accordingly, Points 1, 2 and 3 are overruled.

■ Respondents' Point 4 is to the effect that the Court erred in consolidating these three separate suits and trying them before the same jury. We overrule this point on the authority of Rule 174, T.R.C.P. We have carefully reviewed the charges as alleged against each respondent, and we are of the view that each suit involves a common question of law and/or fact, and we do not think the Court abused its discretion in consolidating these cases. It is true that each appellant was charged with voting the $1.59 budget for the school year, but inasmuch as the Court did not submit that part of the Charge against either of them, that part of the complaint against them passed out of the case, and we do not think the respondents can complain of any prejudice in that behalf. Our view of the record is that the question of the incompetency and/or of the official misconduct of the trustees is lodged in the undisputed factual situation here that they had been advised that $1.35 tax rate would not support or maintain the school for the school year, but only for about a seven-

month period, and when the school had to suspend on account of failure of funds and the respondents failed to provide the means by which the school could continue its operation and took measures to make it impossible to reopen the school after the funds had been arranged therefor, tenders an issue of official misconduct under the provisions of Article 5973, R.C.S. In fact, we think the evidence is conclusive. As we understand our school laws and the statutory duties of the Trustees of our school districts it occurs to us that the failure of the respondents as above indicated and found by the jury is and was an outright violation of their clearly defined statutory duty. See Article 2780, R.C.S., and State ex rel. Edwards v. Reyna, Texas Supreme Court, 333 S.W.2d 833. Since it is without dispute that the respondents were acting with unanimity of opinion in this matter, we see no prejudice resulting to respondents by the consolidation. See Walker v. Walter, Tex.Civ.App., 241 S.W. 524, n. w. h.; Parr v. United States, 5 Cir., 265 F.2d 894, appeal pending; Eberstadt v. State ex rel. Armistead, 20 Tex. Civ.App. 164, 49 S.W. 654. We see no merit in appellants' points 5, 6, 7, 8, 9 and 10, and each is overruled. See also Hamilton v. Hamilton, 154 Tex. 511, 280 S.W. 2d 588, Points 2 and 3, at page 591.

■ Respondents' 11th Point is to the effect that the Court erred in its failure to sustain their motions for instructed verdict. For statement of the Rule see White v. White, 141 Tex. 328, 172 S.W.2d 295, Points 1 to 5, and Olds v. Traylor, Tex. Civ.App., 180 S.W.2d 511, points 8 and 9, at page 514, w. ref. We overrule this contention for reasons hereinafter briefly stated.

Testimony was tendered to the effect that Whitmarsh had been advised by the acting Superintendent that it would be impossible to operate the school within the revenues to be provided by the adopted rate, including the delinquent taxes collected, and that it would be illegal to operate the schools by deficit financing; that the trustees of the Board received advice from the board of school administrators that a budget of $1.59 was a necessity to operate the schools for the years 1958–1959, and that a $1.35 tax rate was insufficient to finance adequately the school program; that said respondents had been advised to the effect that $92,000 in the bond reserve account had been diverted to make up the deficit incurred in operating the schools the previous year on $1.37 tax rate; that notwithstanding this information the respondents did nothing to avert the threatened and impending bankruptcy of the school district which resulted in the closing of the schools. Evidence was likewise tendered to the effect that during the previous school year, while they were operating under a $1.37 tax rate, the district expended many thousands of dollars more than it collected in revenues, and made up the difference from ear-marked bond retirement moneys, and that this could not be duplicated another year on a tax rate of $1.35; that respondents being face to face with these conditions did not raise the tax rate as experience dictated, but actually reduced the tax rate from $1.37 to $1.35. This suit was tried against respondents on the allegations and on the theory that they were incompetent in the sense that they were grossly careless in the discharge of their official duties, and that they were guilty of official misconduct because of their wilful failure, refusal or neglect to perform a duty enjoined upon them by law, which was to provide for the support and maintenance of an efficient system of the public free schools entrusted to them. We think the foregoing factual situation presents a fact issue for the jury. In fact, it appears to this Court that respondents wholly disregarded the advice that they had received with reference as to what was necessary for the operation of the school, and did nothing to avert the threatened and impending bankruptcy of the school district which resulted in the closing of the school before the school term was out.

In view of the pleadings and the testimony tendered we see no error in the Court overruling respondents' Motion for Instructed Verdict, and Point 11 is overruled.

We are of the further view that Points 12, 13, 14 and 15 are without any merit whatsoever, and each is overruled.

Points 16 to 33 inclusive assail substantially each paragraph in the Court's instruction and complain bitterly of the submission of Issues 1 and 2. We have considered each of them very carefully and we do not believe that there is any merit in either of said Points, due to the controlling factual situation that here exists without any dispute whatsoever. In this connection, we have set out what we believe to be pertinent portions of the Court's Charge, and we believe that Issues 1 and 2 submitted in the Court's Charge are the controlling issues in this cause, and that the instructions given to the Jury in the Court's Charge are without any prejudicial error under Rule 434, T.R.C.P.; that Rule in part provides:

"* * * that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, * * *."

In the record here before us we have the undisputed situation where the respondents knew from previous experience that the school could not be maintained on a tax rate of $1.35. When the school was forced to close its doors on account of insufficient funds, and after other arrangements had been made with the bank in Houston for a loan whereby the school could reopen its doors, the respondents in an emergency meeting, acting without authority, declared two of the trustees ineligible and appoint-

ed two other men to take the respective place of the trustees they had unlawfully deposed, and thereafter issued another signature card or notices and advised the bank which had agreed to furnish the loan that it could not lawfully pay the funds that had been provided for the re-opening of the school on the signature card the bank then held. But the respondents claim that the record conclusively shows that they acted in good faith throughout their dealings in the discharge of their duties. We are certainly not in accord with these views, and neither was the jury. The record shows without dispute that the respondents had established a tax rate of $1.35 for the school district in the face of advice from the administrative authorities of the district that such tax rate would not meet the contractual obligations of the district for more than seven of the school months. When that happened the respondents did nothing to correct the mistake that they had heretofore made. They not only did nothing but by their actions prevented and obstructed the use of the money that had been provided for the re-opening. It was the statutory duty of the respondents to provide for the support of an efficient system of public schools, and such breach was certainly some evidence of incompetency and official misconduct of the respondents in the discharge of their official duties, and the jury so found. The respondents did not deny that they set the tax rate at $1.35, nor did they deny that the administrators opposed such low tax rate. It is true that they did deny that the income derived from the tax rate was insufficient to operate efficiently the schools, but this raised a fact question for the jury. This record is without dispute that the respondents' action prevented the use of the supply funds which the Board had made available for the purpose of paying the teachers in order to re-open and operate the school for the remainder of the school year. It is true that the respondents claim that they were justified in their action, because an attorney had advised them to follow such course of ac-

tion. This point was fully covered in the Court's charge. Needless to say that fact alone tendered an issue for the jury, and the jury found against them. The jury here had before it a situation in which the tax rate fixed by the respondents had failed to maintain and support the schools. They likewise had a situation where arrangements had been made with the bank in order to re-open the school and complete the school term. Under the undisputed factual situation here the duty of the respondents was crystal clear with or without legal advice. It is undisputed that the respondents made it impossible for these funds to be used for the re-opening of the school, and this presented a fact question of incompetency and official misconduct and the jury convicted each of the respondents in this behalf.

In Section 1, of Article 7, of our State Constitution, Vernon's Ann.St., we find:

"A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."

The Legislature, in response to this provision of the Constitution has from time to time passed such laws as it deemed expedient and necessary to carry out the foregoing provisions of our Constitution. The Legislature, in Article 2778, R.C.S., provided:

"Each trustee shall first swear that he will faithfully and impartially discharge the duties of such office; and his affidavit to that effect shall be filed after the first election with the county judge, and after all subsequent elections with the president or chairman of the school board."

Article 2780, R.C.S., provides:

"Said trustees shall adopt such rules, regulations and by-laws as they may deem proper; and the public free schools of such independent district shall be under their control; and they shall have the exclusive power to manage and govern said schools, and all rights and titles to property for school purposes heretofore vested in the mayor, city councils, or school trustees by articles 3995, 4013 and 4032, Revised Statutes of 1895, or other statutes, general and special, except such cities as are exempted by this title, shall be vested in said board of trustees and their successors in office; and their claims shall apply to any action or suit which may arise to which said board is a party."

Article 5972, of our Revised Civil Statutes, provides:

"By 'incompetency' as used herein is meant gross ignorance of official duties, or gross carelessness in the discharge of them; or an officer may be found to be incompetent when, by reason of some serious physical or mental defect, not existing at the time of his election, he has become unfit or unable to discharge promptly and properly the duties of his office."

We are of the view that the Court's Charge fairly submitted Issues 1 and 2 to the Jury, and that the instructions contained in the General Charge were in no wise prejudicial to the respondents under what we believe to be substantially the undisputed factual situation.

Accordingly, Points 16 through 33, inclusive, are each overruled.

■ Point 34 assails the judgment because the Court failed to give respondents' Specially Requested Charge:

"You are instructed that public officials are presumed to do their duty, and where as in these suits the Respondents sought a legal opinion from a reputable lawyer as to their duties under the circumstances, in connection

with the question of whether Buckley and Cass had vacated their offices as Trustees by reason of living in the detached territory, and then followed that legal opinion they have not acted wilfully and corruptly or in gross ignorance of official duties or gross carelessness in the discharge of them; and, if from a preponderance of the evidence you find that Respondents sought such legal opinion and followed that legal opinion, then you will find such charge, 'Not True.'"

It is clear to us that such charge was a comment on the weight of the evidence, and was not justified by the record, and Point 34 is overruled. We have carefully considered respondents' Points 35, 36, 37, 38 and 39, and we are of the view that each of them is without any merit whatsoever, and each is overruled.

In State ex rel. Edwards v. Reyna, supra [333 S.W.2d 835], we find this statement of the Rule:

"* * * this Court held in 1890 that the ouster statute is 'penal in character, and must be construed as though it were one defining a crime and prescribing its punishment.' State ex rel. Hickman v. Alcorn, 78 Tex. 387, 14 S.W. 663, 665.

"This rule seems to have been consistently followed. Considering the length of time the ouster statute has been on the books, resort thereto has been comparatively rare. The rule of strict construction may account for this circumstance. *It appears from an examination of the reported cases that all those officials who have been ousted from office had clearly violated or disregarded some duty enjoined by law, generally a standard of conduct established by the legislative branch of government rather than some judicial notion of what is fair or impartial.*" (Emphasis added.)

We think the foregoing statement of the Rule is peculiarly applicable here. This voluminous record shows without dispute that this school district could not be operated and maintained on a tax rate of $1.35. Each of the trustees knew this fact by virtue of their previous efforts to operate the school, and they further knew that the school could not be operated and maintained fully on a $1.37 tax rate, and they were fully advised about this matter, and that it would take the sum of $1.59 tax rate to properly maintain and support the school. Surely their statutory duty was plain and clear, yet, they wholly disregarded their duty in this behalf as this record fully shows, and which we have fully detailed. What clearer or more convincing evidence is required to show incompetency, gross ignorance or gross carelessness, and failure of a duly elected officer to discharge his duty to the office with which he has been entrusted? This Court thinks the answer is obvious, and so did the jury say by its verdict.

Finally, considering this voluminous record on the whole we are of the view that respondents have wholly failed to show a reversible error against them.

■ We are also of the further view that the verdict of the jury is legally sufficient, and that the Court was authorized to enter the judgment thereon. See Texas Employers Ins. Ass'n v. Frankum, 145 Tex. 658, 201 S.W.2d 800.

As we have previously stated, it is our view that Issues 1 and 2 submitted the controlling issues tendered by the pleadings and evidence, and the jury's findings thereon constituted a determination of these controlling issues, and that by reason thereof the Court was authorized to enter the judgment it did enter thereon. See Rules 279 and 290, T.R.C.P., and cases there cited. See Blanton v. E. & L. Transport Company, 146 Tex. 377, 207 S.W.2d 368, Points 2 and 3.

Accordingly, the judgment of the Trial Court is affirmed.