**The TRAVELERS INSURANCE COMPANY, Appellant,**

v.

**Phillip J. WALKOVAK, Appellee.**

No. 14494.

Court of Civil Appeals of Texas.

Houston.

April 15, 1965.

Rehearing Denied May 6, 1965.

Walter E. Workman, Houston, and Baker, Botts, Shepherd & Coates, Houston, of counsel, for appellant.

Bill Allen, Houston, and Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a workman's compensation case in which a judgment was rendered in favor of the injured employee for 55% permanent partial disability.

Appellant has presented several assignments of error ultimately based on the proposition that the trial court was in error in permitting the question of the need for surgery to be presented to the jury where the employee had never demanded surgery before the Industrial Accident Board in view of the fact that the insurance company had not tendered surgery or admitted liability in the case, and that the Board had not caused an examination of the claimant to be made to determine whether or not surgery was advisable or likely to be beneficial to him.

It is appellant's contention that this case is "the reverse side of the coin" of Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521. In both cases the evidence was tendered at trial for a limited purpose bearing upon the extent and duration of incapacity and disability. In Seelbach evidence was tendered by the insurance company that an operation would probably substantially reduce the disability sustained by the claimant. The trial court's refusal to admit such testimony was held to be proper since the carrier had not tendered surgery and admitted liability before the Board.

The basis of this decision lies in the fact that the trial court lacks the jurisdiction given to the Board to order or supervise an operation or direct a medical examination for the purpose of determining the advisability of that course. Since the Act contemplates that the benefits of surgery are to be determined by the actual results of surgery rather than opinion evidence, the Supreme Court held that to permit such testimony at the trial would be to enable the insurer to do indirectly that which it cannot do directly. Seelbach held that the carrier could not show the curative or beneficial effects of surgery because it did not comply with the procedure prescribed by the Act. The Act does not require the employee to seek the permission of the Board before undergoing surgery where he is not seeking to require the carrier to pay the expense of such treatment. There is no reason to apply Seelbach in this case. As the court pointed out, it is logical and reasonable to say that evidence of the probable effect of an operation should be no more excluded than the probable effect of the administration of drugs or of physiotherapy. Here it is not so much the *effect* of the operation that we are concerned with, but rather the *need* for an operation. The provisions of the Act liberally and fairly interpreted do not require the court to exclude from consideration of the jury medical opinion of the need for an operation, under the facts of this case, either expressly or by necessary implication.

The injury by reason of which compensation was sought was sustained February 1,

1956. Appellee received treatment and, after some days, returned to work. He timely filed a claim for compensation with the Industrial Accident Board, but requested that it not be acted upon. He continued to work with comparatively little lost time until July, 1961. About that time he became unable to work and was eventually discharged. In August, 1962, he requested the Board to make an award. Appellee testified at the trial that he worked from necessity in order to support his family. He testified that he told his foreman that his back was bothering him, but that he did not report that he was disabled because he was afraid he would lose his job and that for that reason, as much as he could, he concealed from his employer the true nature of his back condition. It was his testimony that after he requested the Board to withhold action on his claim he did not notify the Insurance Company that he was disabled.

■ On the basis of this and similar testimony appellant requested issues submitting defenses of estoppel, election of remedies, and unjust enrichment. The trial court refused to submit the issues and this action is assigned as error. Counsel for appellant candidly states that he has found no case discussing the applicability of equitable defenses to a claim for compensation under the Workmen's Compensation Act. We think it unnecessary to pass on the abstract proposition, since it appears that the issues requested are not raised by the evidence in this case.

■ While appellee stated that he tried to conceal his disability from his employer and that he could not have done the work without help from his fellow employees, such testimony does not raise the issue of estoppel insofar as the insurer is concerned. There is no showing of a change in position on the part of the insurer as a result of its reliance on any conduct of or statements made to it by the claimant. 22 Tex.Jur.2d, Estoppel, § 4. It has been held that estoppel is never employed as a means of inflicting punishment for unlawful or wrongful act.

Worsham Buick Co. v. Isaacs, 121 Tex. 587, 51 S.W.2d 277, 86 A.L.R. 232.

■ The claimant never withdrew his claim for compensation, or promised that he would do so. So long as the claim was pending the insurer knew that the claimant might assert that he had suffered a loss of earning capacity in spite of the fact that he continued to work and collect his pay. In Consolidated Casualty Insurance Co. v. Smith, 309 S.W.2d 80, this Court cited cases where the employee continued to work at the same, or increased wages and yet was found to have sustained a loss in earning capacity. If there was unjust enrichment it would appear that the cause of action, if any exists, would lie in favor of the employer to recover wages which were not earned, rather than in favor of the insurer to defeat a claim for compensation which, under the facts as found by the jury and law as applied by the trial court, it justly owed the claimant. This contention appears to be the same in principle as the contention that the carrier is entitled to an offset, against compensation due, for wages and sick benefits paid during the period of claimed disability. These contentions have been rejected. City of Austin v. Clendennen, Tex.Civ.App., 323 S.W.2d 158, ref., n. r. e.; Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915, ref., want merit.

■ The Smith and Clendennen cases cited above are illustrative of many cases demonstrating that demanding wages for work done is not inconsistent with the assertion of a claim for compensation for lost earning capacity. There is no merit in the election of remedies defense. The claimant here has not "chosen between two or more inconsistent but co-existing modes of procedure and relief allowed by law on the same state of facts." 21 Tex.Jur.2d, Election of Remedies, § 1.

■ The trial of this case was concluded long after the 300 week period, for which compensation was recovered, had

ended. During that period of time the claim was dormant in the files of the Board by reason of the claimant's request that no action be taken on it. The judgment of the trial court awarded compensation at the rate of $25.00 per week with interest thereon at the rate of 4% compounded annually for 300 weeks. Appellant complains that the award of interest was error since by claimant's affirmative action authorized by the Compensation Act, appellant was prevented from securing a determination of its liability prior to August, 1962.

The Act contemplates voluntary assumption and performance by the carrier of its obligation to pay compensation to injured workmen covered by its policies. Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322. It also provides that where a claimant recovers for past due weekly installments, he shall recover interest on such installments at the rate of 4% compounded annually. In view of this provision of the Act we cannot say that the court erred in its award of interest.

 Appellant contends that the answers of the jury, to Issues 8, 9, 10 and 12, that the accident of February 1, 1956, was a producing cause of 55% permanent partial incapacity beginning February 3, 1956, were supported by no evidence. This contention is based upon the fact that for more than 401 weeks after the date of injury appellee continued to work for the same employer at the same or greater wages. Appellant contends that the fact that there is no speculation about the future involved in this case differentiates it from the many decided cases where the employee continued to work following an injury. Whether or not appellee could have secured and retained employment elsewhere, the fact is that he did work and receive pay during the 401 weeks following his injury, in excess of his "average weekly wage" prior to injury.

There is evidence, however, that appellee suffered a fall causing immediate pain in his back, which became more severe un-til he was carried by his employer to a doctor some eight days later. He was treated for two weeks by conservative methods and then returned to work. He was still having pain in his back and legs, and was not actually able to do the work. He was able to keep his job because his fellow employees helped him with the hard jobs. His attempts to work increased the pain. He could not support his family on $25.00 per week. In September, 1962, his doctor recommended a back operation. In February, 1963 he stopped working and was fired when he would not return to work. He has since attempted to work, but was fired from one job after two weeks, and from another after one and a half days. He applied for another job and was rejected because of his back. He testified that he was not able to crawl around under cars, lift substantial weights, nor freely bend his back forward, backward or sideways, and that being on his feet, or even sitting for extended periods of time, caused his back to ache. His testimony concerning his ability to work during the 401 week period is corroborated by the testimony of two of his fellow employees and by his wife. Three doctors testified that he had an injury causing disability—that they would not pass him for heavy work. The testimony of Dr. Price is to some extent corroborative of appellee's testimony that he suffered disability from the date of the injury.

Unless, therefore, we can say that as a matter of law a man actually working during the entire compensable period after an injury for the same employer at the same or a higher wage cannot recover for general disability under the Act, the answers made by the jury to the questioned issues are fully supported by the evidence.

This case was tried under the statute as it read prior to the 1957 Amendment. It was submitted to the jury for a finding of percentage of disability. Since actual wages is not the same as capacity to earn wages under the Act, the fact that appellee did hold his job and did receive pay in excess of that received prior to his disability is not

conclusive on the question, but is evidentiary only. Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991; Texas Employers Ins. Ass'n v. Frankum, 145 Tex. 658, 201 S.W.2d 800; Employers Reinsurance Corporation v. Holland, 162 Tex. 394, 347 S.W.2d 605; Indemnity Insurance Co. of North America v. Craik, 162 Tex. 260, 346 S.W.2d 830.

The evidence supports the jury's finding that appellee's physical condition was such that he was only able to perform part of the usual task of a workman by reason of which he suffered a reduction of his earning *capacity*. Many cases could be cited where at least during part of the compensable period the claimant worked and received wages equal to or greater than his earnings prior to the injury. In these cases recovery was allowed for the entire period. Consolidated Casualty Ins. Co. v. Smith, supra.

■ Appellant contends that there was no evidence to support the answer made by the jury to Special Issue No. 13, or that, in the alternative, the answer is contrary to the great weight and preponderance of the evidence. The jury found that the 1956 injury produced permanent partial incapacity to the extent of 55%. Special Issue No. 13 asked:

"Do you find from a preponderance of the evidence that none of the incapacity, if any, that you have found in the preceding Special Issues was produced by the Plaintiff's prior injury of February 23, 1953?

"Answer: 'None of the incapacity that we have found was produced by the prior injury of February 23, 1953' or 'Some of the incapacity that we have found was produced by the prior injury of February 23, 1953.' "

Even though the jury might have believed from the testimony that appellee continued to suffer some disability as a result of the 1953 injury, this would not be inconsistent with their finding that the 1953 injury was not the producing cause of any of the 55% permanent partial incapacity produced by the injury in question. There was ample evidence in the record from which the jury might have concluded that appellee was totally disabled under the charge given them by the court. Their finding that he sustained a 55% partial disability may well have resulted from their conscientious effort to segregate the effects of prior and subsequent injuries· from the effect of the injury of 1956.

■ ·Appellant also attacks the answer of the jury to Special Issue 17 finding that appellee's incapacity since November 22, 1956, was not caused solely by subsequent injuries, diseases or bodily conditions entirely unconnected with the accident made the basis of the suit. It was established at the trial that appellee had suffered other injuries and illnesses subsequent to the accident made the basis of the suit, some of which required hospitalization. While evidence might require a holding that a subsequent injury or disease did in fact produce total incapacity for a period, such total incapacity will not have the effect of superseding a pre-existing and continuing partial incapacity. There is evidence that appellee's back condition resulting from the injury in question, and the consequent pain and disability, continued during the entire period to the date of trial. That his disability might have been increased by subsequent events does not render the disability actually suffered solely as a result of the accident in question noncompensable.

The judgment of the trial court is affirmed.